## MISSOURI, O. & G. RY. CO. v. BROWN.

No. 3220. Opinion Filed November 11, 1913.

Rehearing Denied December 9, 1913.

1. **MASTER AND SERVANT**—Defense—Acts of Independent Contractor. A person cannot employ another person to do for him, as an independent contractor, an unlawful thing, and thus escape the consequences of the unlawful act when sued for damages occasioned thereby.

2. **DAMAGES**—Measure—Destruction of Crop. In a suit for damages for the destruction of a growing crop, such damages are to be estimated as of the time of the injury, and the measure to be applied is compensation for the value of the crops in the condition in which they were at the time of their destruction.

3. **SAME**—Growing Crop—Determination of Value. In arriving at the value of a growing crop, it is proper to show by evidence the probable yield under proper cultivation, and the value of such probable yield when matured, gathered, prepared, and ready for sale; also the probable cost of proper cultivation necessary to mature the crop, as well as the cost of its gathering, preparation, and transportation to market. The difference between such probable value in the market and the cost of finishing the cultivation, and gathering, preparing, and transportation to market will ordinarily represent the value at the time of loss with as much certainty as any other method.

4. **SAME.** The value of the labor bestowed on a growing crop in bringing it forward to the time of its wrongful destruction does not ordinarily afford either a sufficient or safe measure of the damages occasioned by its loss.

5. **RAILROADS**—Injuries Incident to Construction—Damage to Crops—Animals. In a suit for crop damage, wherein it is alleged that defendant railway unlawfully entered upon the land,

and tore down and destroyed the fencing, thus permitting animals to destroy the crops, and the evidence of plaintiff shows that defendant, through persons acting for it, did break plaintiff's fence, and enter upon lands of which he was in the rightful possession, and because of such breaking of and leaving down the fencing the crops were destroyed, a prima facie case is made; and in the absence of evidence upon the part of defendant that it had acquired in some way a right of way over the land, and thereby had a right to break and enter, a verdict for plaintiff will not be disturbed.

(Syllabus by Brewer, C.)

*Error from County Court, Bryan County;*
*J. L. Rappolee, Judge.*

Action by Frank Brown against the Missouri, Oklahoma & Gulf Railway. Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*E. R. Jones* and *J. C. Wilhoit,* for plaintiff in error.

*J. M. Crook,* for defendant in error.

Opinion by BREWER, C. The defendant in error brought suit in the court below against plaintiff in error, as defendant, alleging in substance that he was in the legal possession of certain farming lands (described), and that on or about the 1st day of May, 1910, the defendant unlawfully entered upon said lands, destroyed and removed the fences inclosing said lands, and negligently left said lands and crops growing thereon subject to be destroyed by stock running at large in the neighborhood thereof; that on said date plaintiff had planted and had growing on said lands 25 acres of cotton; and that stock entered thereon, and totally destroyed the growing crop, which was of the value of $125. The case was first tried in a justice of the peace court, where the plaintiff prevailed, and it was appealed to the county court, and plaintiff was awarded the full sum sued for. The railway company, as plaintiff in error, appeals.

Plaintiff in error complains: (1) That the demurrer to the plaintiff's evidence should have been sustained. (2) That plaintiff failed to prove damage. (3) That the actionable wrong and resulting damage, if any are shown, are the result of the acts of an independent contractor.

We will discuss the points in the order named.

(1) The evidence shows that in the spring of 1910 the agents of the railway came to plaintiff's farm, and cut a gap through the fencing, 75 or 100 feet wide, where the right of way entered, and also at the point where it left the farm; that these openings were left open, and through them cattle entered upon plaintiff's crops; that the plaintiff had broken up 25 acres of land, cross-harrowed it, listed it, and planted it to cotton with seed that cost 60 cents a bushel; at about the time cotton plants commenced coming up that large numbers of cattle entered in and upon the land through these openings, and totally destroyed the young cotton, actually eating all of it up. The defendant offered evidence to show that, where the fencing was cut at the right of way, it had erected temporary wire gates across the same to protect the crops; but there was much evidence that the openings made by the defendant remained open, and that cattle roamed onto plaintiff's lands at will for a long period of time. There was no evidence received or offered to show that the railway was the owner, through purchase or condemnation, of the right of way it appropriated through plaintiff's farm, or that it was entitled to possession, so as to give it the right to break and tear down the fencing.

The answer of the railway was a general denial. The specific issue thus tendered was whether or not defendant "unlawfully entered in and upon said land, destroyed and removed the fences inclosing said land," etc., thus causing through such unlawful acts the destruction of plaintiff's crops.

The evidence shows that the land belonged to Webb, and that plaintiff was a tenant in lawful and peaceable possession of the same, farming the land, and that defendant came, and through persons acting for or under its authority, without plaintiff's knowledge, broke and destroyed the fences, and deprived plaintiff of the value of his cotton crop.

The secretary of the defendant corporation was on the witness stand, but gave no testimony tending to show that it had any right to enter upon this farm, and tear down and leave down the fencing surrounding this crop. We think plaintiff's

proof sufficient to require the defendant to justify its acts by showing a right to break and destroy the fence. This it has not done, notwithstanding the fact that one of its general officers was on the witness stand, and, if defendant had procured a right of way through this land by purchase or condemnation, he certainly would have said something about it under the issue being tried.

(2) The breaking of the fence and the exposure of the crops to the ravages of cattle being tortious, so far as the proof shows, the question of independent contractor cannot arise. A person cannot employ another to do for him, as an independent contractor, an unlawful thing, and thus escape the consequences of the unlawful act. 16 A. & E. Ency. of Law (2d Ed.) 203 (citing *Ellis v. Sheffield C. C. Co.,* 2 El. & Bl. 767; *Walker v. McMillan,* 6 Can. Sup. Ct. 241; *Barry v. Terkildsen,* 72 Cal. 254, 13 Pac. 657, 1 Am. St. Rep. 55; *Smith v. Simmons,* 103 Pa. 32, 49 Am. Rep. 113; *Heidenwag v. Philadelphia,* 168 Pa. 72, 31 Atl. 1063).

(3) The contention that damages have not been legally shown rests upon the fact that plaintiff produced no witness who stated his opinion of the value of the growing cotton, in its then condition, at the time it was destroyed. The evidence of two witnesses showed that the breaking of the land was worth $2, the cross-harrowing $1.50, the bedding $1, the planting with seed that cost 60 cents a bushel $1, per acre, and that 25 acres of cotton just up was destroyed. Defendant produced a witness who estimated the value of these various items at an aggregate cost of about $3 per acre. Under plaintiff's evidence the actual value of the labor in producing a stand of cotton was $5.50 an acre, which, if sufficient evidence of value, aggregates a sum in excess of the verdict returned. Defendant's evidence would not have justified so large a verdict.

The plaintiff undertook to prove value, and asked this question: "What was the value per acre of that cotton at the time it was destroyed by cattle?" This question was objected to, and after that, without objection, both parties presented evidence of the cost of getting the crop in the condition it was in when destroyed. It seems to have been the idea of both sides that the

value of the labor put on the crop would adequately represent the amount of damage in case the defendant was liable.

It is the general rule, as stated in *C., R. I. & P. Ry. Co. v. Johnson,* 25 Okla. 760, 107 Pac. 662, 27 L. R. A. (N. S.) 879, that "the damages are to be estimated as of the time of the injury, and that the measure thereof is compensation for the value of the crops in the condition in which they were at such time." In that case it is said:

"It is permissible as a means of arriving at the value of a growing crop to prove its probable yield under proper cultivation, the value of such yield when matured and ready for sale, and also the expense of such cultivation, as well as the cost of its preparation and transportation to market; the difference between the value of the probable crop in the market and the expense of maturing and placing it there in most cases will give the value of the growing crop with as much certainty as can be attained by any other method."

And in discussing the various ways of arriving at the value of a growing crop, the precise question presented here was in the mind of the court, but not necessary for decision. (Note *quaere* in syllabus.) The court, however, in that case quotes from *Col. Con. L. & W. Co. v. Hartman,* 5 Colo. App. 150, 38 Pac. 62, as follows:

"But, in order to establish the value at the time of the destruction, courts are compelled to resort to several methods of computation, and either, or all combined, may afford a fair basis. One might be a year's rental value, with the cost of planting and bringing forward the crop until the time of its loss; another, what the crop would bring in its immature state at a sale; and a third, the proof of the average yield and the market value of crops of same kind planted and cared for in the same manner, less the cost of maturing, harvesting, and marketing. While neither would afford positive proof, they would all seem to be proper, and the only way by which a jury could get the necessary data upon which to base a verdict."

The above case seems to hold that the cost of bringing a crop forward to the time of its loss is permissible; but in *Chicago, etc., R. Co. v. Barnes,* 10 Ind. App. 460, 38 N. E. 428, this doctrine is squarely repudiated. In this state of the law we do not deem it wise to hold as a general proposition that the cost of

bringing forward a crop to the time of its loss affords a proper measure of the damage for its wrongful destruction. The value of a growing crop at any certain period of its development depends upon its prospect of a yield and the probable value thereof, and many other factors may enter into and influence this prospect. Unusual and expensive labor may have been employed in preparing the ground for and bringing forward a crop; yet, through the vicissitudes of the weather, the ravages of insects, the failure to get a stand, or for many other reasons the value of the immature crop at the time of its loss may be in no way commensurate with the value of the labor bestowed upon it. On the other hand, a crop may be brought forward to the time of its loss with very small cost, and yet favorable conditions may have so affected it that it at the time gives promise of an abundant and valuable harvest, outreaching many times the expense theretofore put upon it. A general and ordinarily a just rule is clearly stated in *C., R. I. & P. Ry. Co. v. Johnson, supra,* and quoted herein, and, while the varying conditions under which this question will arise require liberal treatment by the court to meet the situation, yet in the main it is far safer and wiser for litigants to proceed along the plain highway, and not trust themselves to bypaths that often lead into the confusion of the wilderness.

However, as stated heretofore, it is very clear that these parties adopted and tried this question upon the theory that the cost of the labor plaintiff had expended on this crop would adequately and properly measure his loss, if defendant was in any event liable to him therefor. Each side offered evidence *pro* and *con* as to this cost without objection from the other. If they were satisfied at the time to so measure the loss, they ought not now be allowed to reverse a case for an error they assisted in making. It would probably be only under rare circumstances where a growing crop would not be worth at least the labor expended upon it. This does not take into account rental value or prospective profits, and it must certainly be true that under ordinary circumstances there is some profit in husbandry above the actual cost of labor. It does not appear to us that an unjust

verdict has been rendered, and, so believing, we will hold the parties to the theory upon which they tried the case.

The judgment should be affirmed.

. By the Court: It is so ordered.