Herman REGIER, Plaintiff in Error,

v.

Jamie C. HUTCHINS and Joe Hutchins, wife and husband, Defendants in Error.

No. 37023.

Supreme Court of Oklahoma.

June 12, 1956.

Meacham, Meacham & Meacham, Clinton, for plaintiff in error.

J. T. Bailey, Cordell, for defendants in error.

BLACKBIRD, Justice.

In the trial court, the defendants in error herein were the plaintiffs, and plaintiff in error was the defendant. They will hereinafter be referred to by those appellations. The controversy between them involves injuries allegedly inflicted in 1953 by floodwaters of the Washita River, upon a cotton crop. The cotton was growing upon approximately 50 acres of a 240-acre farm owned by the plaintiff Jamie C. Hutchins, and, upon which, she and her husband, the other plaintiff, Joe Hutchins, reside. Downstream from where the river traverses this farm there was originally a large "ox-bow" bend in its channel as it crossed defendant's farm. A few years before 1953, defendant commenced his efforts to shorten the river's channel across his land, and, well in advance of the particular flood here involved, had dug a new channel straight across the neck of land between the ends of the ox-bow and had forced the river to occupy this new channel by building a levee or diversion dike paralleling the new channel, between it and the ox-bow bend. As a result of this blocking off, or barricading, of the old channel, when the river rose above its banks and inundated land on either side of its channel, upstream from defendant's farm, where plaintiffs' farm was located, such flood water was deprived of the old ox-bow channel as a means of escaping from said land when it started receding. Defendant's responsibility for the damages for plaintiffs' cotton crop was predicated on this alleged fact, and the further fact that after defendant's shortening of the river's channel in the described manner, the river, in times of high water, got out of its banks, and backed up, inundating plaintiffs' cotton field to a greater extent than it had done during the years previous to such alteration of the river channel.

After the trial court had overruled, among other preliminary pleadings filed on his behalf, the motion of defendant to require plaintiffs to make their amended petition more definite and certain by stating what interest the husband, Joe Hutchins, had in the overflowed cotton land, and which, if either, or both, of the plaintiffs owned the crop thereon, and if so, what interest each had, defendant filed an answer denying, among other things, that he had been negligent in the "improvements" he had made on his land and that they had injured the land described in plaintiffs' petition, or the crops thereon.

At the trial, after the overruling of defendant's demurrer to the evidence and motions for directed verdict, the issues of fact

with reference to the alleged injuries to the cotton crop, were submitted to a jury which rendered a verdict for plaintiffs in the sum of $542.50. Thereafter, at a further hearing, without a jury, the court sustained plaintiffs' additional cause of action for an injunction against defendant's maintenance of the levy or dike as it then existed. Accordingly, the judgment thereupon entered for plaintiffs included not only their recovery of damages in the sum of $542.50, but also a decree that defendant cut an opening or gap fifty or more feet wide in the levy "to the level of the Hutchins' land * * *".

For reversal, defendant contends, under his first proposition that his challenge to the sufficiency of the evidence should have been sustained and a verdict directed for him on the damage feature of the case. His fourth argument under this proposition pertains to the effect of the river channel "improvements" he made, and he asserts there was insufficient evidence to show they in any manner injured or harmed plaintiffs. He recognizes, however, that there was testimony by more than one witness to the effect that, subsequent to the flooding, the floodwaters were slower in draining off of the cotton land involved, after these so-called improvements, than before. His argument, when correctly analyzed, is that such evidence was not of such weight as to support the verdict, but he cites no authority, nor otherwise effectively demonstrates, that it was incompetent. Consequently, it is without merit. In this jurisdiction, determination of the truth and veracity of witnesses, and the weight to be given their testimony is the prerogative of the jury; and its verdict will not be set aside where there is evidence reasonably tending to support it. On the point referred to, there was, as conceded by defendant, such evidence. This is a sufficient answer to defendant's argument in view of our well-settled rule of appellate review.

Defendant's third argument, concerning the sufficiency of the evidence, is directed toward attempting to show that, according to the evidence, the flood of 1953 was an unprecedented one, though similar in size and extent to those that had occurred in previous years. His characterization of it as "unprecedented" refers only to the particular time at which it occurred. He says the fact that such flood was not shown to have ever occurred at the particular time in the year in which the 1953 flood occurred was sufficient to render it "unprecedented" within the rule exonerating defendants in such cases from liability, citing Oklahoma City v. Rose, 176 Okl. 607, 56 P.2d 775, and Town of Jefferson v. Hicks, 23 Okl. 684, 102 P. 79, 24 L.R.A.,N.S., 214. This argument relates directly to the precise circumstances which rendered the floodwaters in this particular instance injurious to the crop involved. These were that the land, on which the crop was growing, happened to be inundated just at the time when the cotton plants were in bloom, and squares were appearing thereon. There was evidence indicating that the floodwaters, in surrounding these plants at this particular time, and depositing silt and mud on them and in the plant's blooms and squares, and, in remaining around these plants for as long as 72 hours, instead of receding within a considerably shorter period and taking with it much of the mud and silt deposited (as such flood waters had done in the years previous to defendant's alteration of the river's channel) the 1953 flood caused the blooms and squares to drop off, thereby reducing the cotton yield from the particular 50 acres involved. We do not think the fact that the inundation in question occurred during the month of July, while the cotton was in bloom and had bolls forming on it, rather than having occurred in an earlier, or later period, of the year when the cotton's growth was not at such a critical stage (as had previous floods) rendered it an "unprecedented" or "extraordinary" one within the contemplation of the rule defendant relies on. Though the question of whether the flood in a given case was an ordinary, or an extraordinary, one is not without difficulty, this court is generally recognized as having, early in its history, accepted and approved the definition of an ordinary flood as "one, the repetition of which, though at uncertain intervals, might, by the exercise of ordinary diligence in investigating the charac-

ter and habits of the stream, have been anticipated." See the Annotations at 23 A.L.R. 2d 750, 757, and 93 C.J.S., Waters, § 20, Note 95, and 67 C.J. 709, Note 5, citing Town of Jefferson v. Hicks, supra, in which, at page 80 of the Pacific Reporter, such definition is quoted from 13 Ency. of Law, 2d Ed., p. 686. Madisonville, H. & E. R. Co. v. Renfro, Ky., 127 S.W. 508, 509, was a case in which Renfrow sought damages from a railroad company for constructing an embankment for its line of tracks in such a way that it caused floodwaters from Rough River to stand on his growing crop in July of 1909. One of the railroad company's defenses was that the particular flood involved was unprecedented. There the court, in holding that it was no defense to the company that said flood was unusual for that time of year, said:

"It is very clear from the evidence that the rain that caused the flow was an unusual one at that time of the year. Generally, the heavy rains fell in the spring; and this rain was not unprecedented so much on account of the volume of water as of the time of year that it happened. * * * In the construction of improvements like the one in question, the person erecting them must take notice of floods and rainfalls that may occur in that vicinity without reference to the particular time in which heavy rains may fall. The time that heavy rains may come is not so material as the fact that they do come. The rain that damaged appellee was unprecedented for July, but in the winter and spring such rainfalls and floods were not uncommon, and the company in the construction of its embankment was required to take notice of the well-known fact that heavy rains and floods came in that vicinity, during each year. If the company was only obliged to make provision against excessive rains in July, it might well be said that the rain and flood that damaged appellee was unprecedented, and so the verdict would not only be against the evidence, but contrary to law. But, when the company must take notice of the rainfall in the vicinity in which the improvement is made, and it makes a permanent improvement intended to remain in the same condition during the whole of the year and for many years, we are unable to perceive that it makes any difference except as to the amount of damage done and resulting liability when heavy rains fall. It would be a curious doctrine to announce that if heavy rains usually fall in April of each year, and the company would be under a duty to so construct its improvement as not to damage adjacent landowners during this month, it would yet not be obliged to guard against a like rain that fell in June or July. There was ample evidence that rains as heavy as the one in question were of frequent occurrence in the winter and spring of each year, and so upon this point the verdict is not against the evidence."

We think the above quoted pronouncements, when applied to the present case, are a complete answer to defendant's argument that his challenges to the sufficiency of the evidence should have been sustained on the ground that the flood in question was an "unprecedented" one.

Defendant's second argument, under his first proposition, is that the evidence gave the jury no correct basis for measuring the amount of damages resulting from the flood's reduction of the cotton yield. He recognizes that plaintiffs introduced evidence showing the annual cotton yield of the tract, and/or similar land, over a 5-year period beginning several years before 1953, and ending with 1954; but he says that there is no evidence that, at the time of the 1953 flood in question, the crop then growing on the land was above, or below, normal. He says that this court can take judicial notice of the fact that cotton yield from identical land will vary greatly from year to year due to differences in weather, boll weevils, and other factors. He also cites testimony of Joe Hutchins to the effect that in a year when the particular land in question received no moisture from any kind of a spring overflow, it did not "make" a crop. We find no merit in this argument. Besides giving figures from

which the jury could determine the land's average annual per-acre yield, plaintiffs also gave testimony with reference to the per-acre yield in 1953 of a portion of the same tract that was not inundated by the flood in question. It is difficult for us to see how the jury could have been furnished evidence by which it could have more accurately arrived at the amount of cotton the land in question would have produced, had it not been for the 1953 inundation involved, than that which was introduced in this case; and defendant demonstrates none. We think the evidence gave the jury sufficient data from which it could determine for itself whether the yield on the inundated land would have been normal, abnormal, or subnormal, but for the inundation.

■ Additionally, defendant refers to the evidence plaintiffs introduced to show the profit they lost by reason of the inundation's reduction of their crop. His counsel represents, that, in attempting such proof, they showed only what it would have cost them to grow the crop, up to the point of harvesting, and they cite Missouri, O. & G. Ry. Co. v. Brown, 41 Okl. 70, 136 P. 1117, 50 L.R.A.,N.S., 1124, apparently for the proposition that such cost is not the correct measure of damages in a case like the present one. It will be noted from the discussion in the body of the opinion in the cited case at page 1119, of 136 P. that there is more than one way of proving the value of an unmatured crop, and the views expressed therein clearly indicate that a litigant should not be restricted to only one of those alternate methods. The record shows that plaintiffs not only proved the total price they received for the few bales of cotton that the land in question *did* produce in 1953, but they also showed the cost of producing and marketing same. We think plaintiffs' evidence, as a whole, furnished the jury an adequate enough basis for computing the net loss from the inundation, to withstand defendant's challenges to its sufficiency. If the evidence was not as complete in some details as it might have been, this fact could not have prejudiced the defendant in view of the modest verdict.

■ Our views on this feature of the case also indicate why we think the court's Instruction No. 4, with reference to the measure of plaintiffs' damages, of which defendant also complains in his Proposition V on the basis of Missouri, O. & G. Ry. Co. v. Brown, supra, if at all erroneous, was harmless.

■ Under his Proposition VI, defendant complains of the trial court's sustaining of plaintiff counsel's objection to his answering a question propounded to him by his own counsel, as follows:

"Q. Whatever you have done down there, has Mr. or Mrs. Hutchins come down and talked to you?"

It is not definitely indicated, but this question was probably asked to elicit proof in support of the third paragraph of defendant's answer asserting estoppel on the part of plaintiffs to complain of defendant's alteration of the river channel. Defense counsel cites a California case, In re Buchman's Estate, 132 Cal.App.2d 81, 281 P.2d 608, as authorizing our consideration of this alleged error even though they made no offer of proof showing what the witness' answer to the quoted question would have been, had the court allowed him to answer it. For the rule of appellate review referred to see Hudson v. Blanchard, Okl., 294 P.2d 554, and Boone v. State, Okl., 261 P.2d 581. That case is distinguishable from the present one because here the witness had not, as in the cited case, given previous testimony indicating how he would have answered the question. We think that under the rule referred to, the question of his answer's exclusion is not before us.

■ Of the argument under defendant's Proposition I, this leaves for consideration his first claimed ground of error in the trial court's ruling on his demurrer to the evidence and motions for a directed verdict, i. e., that the evidence does not show that plaintiff, Joe Hutchins, had such interest in either the cotton crop, or the land on which it was growing, as would render him the proper recipient, or beneficiary, of damages and/or injunctive relief as awarded him in the trial court's judg-

ment. As hereinbefore indicated, this plaintiff was the husband of the other plaintiff, Jamie C. Hutchins. It was stipulated that the latter was the legal owner of the land; and defendant's inference is that she, rather than Joe, was the only proper party, if any, to have been granted the injunctive relief. Another fact agreed upon in the stipulation was that both Jamie and Joe resided upon the land involved. After examining the latter's testimony, we think it sufficient, in the absence of any contrary indication, to support a reasonable inference that they both owned the cotton crop and that, as it stood when flooded, it was the product of their joint industry. As joint owners of the crop, each suffered damages from its loss or injury. As the evidence thus established the right of both plaintiffs to sue on one of their causes of action, and as defendant tacitly concedes the wife's right to sue on the other, the trial court properly overruled defendant's general demurrer to the evidence and motions for a directed verdict. In interposing them, defendant asserted the insufficiency of the evidence to establish a cause of action in their favor. Therefore, if the evidence tended to prove one such cause, it was sufficient to withstand those challenges. In this connection see Local Federal S. & L. Ass'n of Oklahoma City v. Sickles, 196 Okl. 395, 165 P.2d 328; 88 C. J.S., Trial, § 235 c.

█ Under his Proposition II, defendant represents that the evidence on which the court granted plaintiffs the injunctive relief was based solely on that presented to the jury, which evidence, he says, does not warrant said relief. He argues that this case comes within the rule that such relief should be granted *only* in situations that so clearly call for it as to make its refusal work a real and serious hardship and injustice. As supporting this argument, he refers to the absence of any evidence that the 1953 inundation did any permanent injury to the soil, and again alludes to testimony indicating annual inundations were beneficial to plaintiffs' cotton crop except when they occurred during said crop's blooming season. This argument is without merit. Because the injury is to a crop,

rather than to soil, and same may not occur again for many years, does not render the injury's prevention unnecessary from the standpoint of equity; and, if cutting a gap in the levee, as ordered by the trial court, will give assurance against its recurrence, such facts present no reason for the denial of such relief, even though defendant may have gone to some expense in building the levee and plaintiffs either did not, or could not, anticipate its effect on the river's overflow, or made no complaint about it, until after the inundation of 1953.

█ Defendant also complains that in its order for the cutting of this gap "to the level of the Hutchins' land * * *" the trial court did not specify whether the highest, lowest, or mean level of said farm was contemplated. Without some showing that this part of the judgment is so indefinite and uncertain that their client does not understand it, or cannot comply with it, such argument presents no ground for reversal.

█ Under his Propositions III and IV, the asserted failure of plaintiffs' petition, and its amendment, to allege the character of each plaintiff's interest in the land, is made the basis of defendant's argument that the trial court erred in overruling his demurrer to said pleadings and his motion to make them more definite and certain. However, defense counsel makes no showing or demonstration of prejudice to their client by these alleged errors, and, from our examination of the record, we cannot say that any prejudice to him resulted therefrom. It is well established in this jurisdiction that where the trial court's judgment is within the issues and supported by competent evidence, the Supreme Court will not reverse it on account of errors in pleading or procedure, unless it appears that such errors have probably resulted in a miscarriage of justice or constituted a substantial violation of appellant's constitutional or statutory rights. Montgomery Ward & Co. v. Beller, Okl., 276 P.2d 932.

As we have found in the arguments presented by defendant no cause for reversing the judgment of the trial court, said judgment is hereby affirmed.

JOHNSON, C. J., and CORN, HALLEY and HUNT, JJ., concur.

WILLIAMS, V. C. J., and JACKSON, J., concur in result.

DAVISON, J., concurs in result as to damages and dissents as to the granting of injunctive relief.