2004 OK 82

Mary E. THOMAS, Plaintiff/Appellant,

v.

E–Z MART STORES, INC., Defendant/Third Party Plaintiff/Appellee,

v.

Core–Mark International, Inc., and Aramark Uniform Company, Third Party Defendants.

No. 98,979.

Supreme Court of Oklahoma.

Nov. 2, 2004.

Kayce L. Gisinger, George W. Dahnke, Abowitz, Timberlake & Dahnke, P.C., Oklahoma City, OK, for Plaintiff/Appellant.

Tracy Pierce Nester, Harry A. Parrish, Pray, Walker, Jackman, Williamson & Marlar, Oklahoma City, OK, for Defendant Third Party Plaintiff/Appellee.

EDMONDSON, J.

¶ 1 The issue presented for our review on certiorari is whether the trial court was correct in determining in the context of a premises liability lawsuit that a business invitor's claims against a third party and its claim that the third party caused the invitee's injury should be heard by the jury determining the liability of the invitor to the invitee. That issue may not be unequivocally answered in this case. The trial court did not consider whether the third party was an independent contractor of the invitor, or whether the invitor's indemnity claim against the third party was based upon vicarious liability of an invitor for the act of an independent contractor, or whether the separate claims could be simultaneously considered by a jury using proper instructions without causing confusion.

¶ 2 Thomas brought an action against E–Z Mart Stores, Inc. (E–Z Mart), and alleged that she slipped on a floor mat in the store which resulted in her fall and subsequent injury. E–Z Mart filed a petition against Aramark Uniform Company (Aramark) and Core–Mark International, Inc., (Core–Mark), distributors and suppliers of the floor mat. E–Z Mart alleged that Core–Mark and Aramark were liable based upon theories of either contribution or indemnity.

E–Z Mart's petition alleges that: 1. The floor mat was manufactured by Aramark and supplied to E–Z Mart by Core–Mark; 2. The mat was defective; 3. The mat was not the type of mat that Core–Mark was required by an agreement to supply to E–Z Mart; and 4. Core–Mark was negligent in supplying a defective mat. E–Z Mart asked for a judgment against Aramark and Core–Mark for sums, if any, that E–Z Mart would be adjudged liable to Thomas. Aramark and Core–Mark were granted their motion to bifurcate the proceedings, and a jury trial commenced solely against E–Z Mart.

¶ 3 The jury returned a verdict against E–Z Mart in the amount of $350,000, and a judgment was then entered in accordance with the verdict. The jury attributed no negligence to Thomas. E–Z–Mart filed a motion for new trial. E–Z Mart argued that a new trial was necessary because the trial court did not allow E–Z Mart to present evidence on the alleged negligence of a third-party (Core–Mark) or E–Z Mart's requested instruction on the negligence of a third-party.

¶ 4 On appeal the Court of Civil Appeals determined that E–Z Mart is vicariously liable for the acts of Core–Mark. The appellate court concluded that E–Z Mart's duty to a business invitee, Thomas, could not be delegated to Core–Mark, and that Core–Mark was an independent contractor to E–Z Mart. The court reversed the order granting a new trial, and E–Z Mart sought certiorari. We agree with the Court of Civil Appeals that the premises liability could not be delegated, and we agree that a premises liability may not be transferred to an independent contractor when the injury-causing condition of the premises is within the control of the invitor. We reverse the order granting a new trial because E–Z Mart's new trial quest was insufficient as we explain herein, and the trial court erred on a question of law.

## I. Standard of Review

■ ¶ 5 This proceeding is an appeal from an order of a trial court granting a new trial. The trial and the motion for new trial were heard before the same judge. When an appellant challenges an order granting a new trial a stronger showing of error must be made than when challenging an order denying a motion for new trial. *Dominion Bank of Middle Tennessee v. Masterson,* 1996 OK 99, 928 P.2d 291, 294; *Sligar v. Bartlett,* 1996 OK 144, 916 P.2d 1383, 1387.

■ ¶ 6 The issue contested by the parties is whether the trial court was correct in combining Thomas' claim against E–Z Mart with E–Mart's claim against Core–Mark in one trial. The issue of either consolidating claims into one trial or bifurcating for separate trials is governed, in part, by § 2018(C) & (D) of the Oklahoma Pleading Code.[1] A clear abuse of discretion by the trial court when applying § 2018(C) & (D) must be shown by an appellant to reverse the trial court's order.[2]

1. 12 O.S.2001 § 2018(C) & (D):
   C. CONSOLIDATION. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.
   D. SEPARATE TRIALS. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury.

2. The standard is stated in *Landrum v. National Union Ins. Co.,* 1996 OK 18, 912 P.2d 324, 328, when the court applied § 2018(D) and relied on *Faulkenberry v. Kansas City Southern Ry. Co.,* 1983 OK 26, 661 P.2d 510, 513, *cert. den.* 464 U.S. 850, 104 S.Ct. 159, 78 L.Ed.2d 146 (1983), an opinion which predated § 2018. In *Puckett v. Cook,* 1978 OK 108, 586 P.2d 721, 723, another opinion that predates § 2018, the court applied

¶ 7 A review using an abuse of discretion standard includes an appellate examination of both fact and law issues. *Tibbetts v. Sight'n Sound Appliance Centers, Inc.*, 2003 OK 72, ¶ 3, 77 P.3d 1042, 1046; *Christian v. Gray*, 2003 OK 10, ¶ 43, 65 P.3d 591, 608. The fact issue involves whether the ruling reviewed is without a rational basis in the evidence to support the decision. *Tibbetts*, at ¶ 3, 77 P.3d at 1046. The law issue involves whether the ruling is based upon an erroneous legal conclusion. *Id.* We apply a *de novo* and non-deferential review when an assigned error is one of law. *Id.* at ¶ 4, 77 P.3d at 1046.

¶ 8 The trial court granted the motion for new trial based upon a determination that EZ–Mart is entitled, as a matter of law, to introduce additional evidence at trial and submit to the jury an instruction on the alleged negligence of, and/or indemnity relating to, Core–Mark.[3] We examine that determination.

## II. The Premises Liability Claim

¶ 9 Thomas brought an action based upon on "premises liability;" that is, the liability of E–Z Mart as the owner/occupier of the premises where her injury occurred. In premises liability actions we have explained that a landowner's duty varies with the status of the entrant. *Pickens v. Tulsa Metropolitan Ministry*, 1997 OK 152, 951 P.2d 1079, 1083–1084; *Brown v. Nicholson*, 1997 OK 32, 935 P.2d 319, 321. For example, in *Pickens*, we said:

> To a trespasser, a landowner owes in the common law status-based classification system only a duty to avoid injuring him wilfully or wantonly. To a licensee, an owner owes a duty to exercise reasonable care to disclose to him the existence of dangerous defects known to the owner, but unlikely to be discovered by the licensee. This duty extends to conditions and instrumentalities which are in the nature of hidden dangers, traps, snares, and the like.

> To an invitee, an owner owes the additional duty of exercising reasonable care to keep the premises in a reasonably safe condition for the reception of the visitor. Even vis-a-vis an invitee, to whom a landowner owes the highest duty in this trichotomous classification system, the law does not require that the landowner protect the invitee against dangers which are so apparent and readily observable that one would reasonably expect them to be discovered. In other words, a landowner owes to an invitee, as well as to a licensee, a duty to protect him from conditions which are in the nature of hidden dangers, traps, snares and the like.

*Pickens*, 1997 OK 152, 951 P.2d at 1083–1084, (notes omitted).

No party disputes that Thomas has the status of an invitee.

¶ 10 Thomas argues that E–Z Mart's duty, as an invitor, may not be delegated by E–Z Mart to Core–Mark. In this case E–Z Mart delegated to Core–Mark, by an agreement, the responsibility for maintaining one aspect of ingress and egress to E–Z Mart's property, supplying and maintaining floor mats used at the entrance to the store. E–Z Mart argues that its claim is not about delegating its duty as an invitor, but rather, its right to have the jury apportion liability to Core–Mark as the actual wrong-doer.

¶ 11 We have explained that whether a duty is non-delegable is a question of law. *Bouziden v. Alfalfa Elec. Co-op., Inc.*, 2000 OK 50, ¶ 12, 16 P.3d 450, 455–456. We agree with Thomas that, with respect to Thomas, the *liability* (ultimate legal responsibility) of that duty which is owed to Thomas, as an invitee, cannot be delegated by E–Z Mart.

¶ 12 We recently discussed nondelegable duties in *Copeland v. Lodge Enterprises, Inc.*, 2000 OK 36, 4 P.3d 695.

> ¶ 12 Although a hirer ordinarily cannot be held liable for the negligence of an independent contractor, the rule of non-

---

an abuse of discretion standard when reviewing an order consolidating cases for trial.

**3.** E–Z Mart's motion for new trial and supporting briefs do not mention Aramark. This Court does not issue advisory opinions or answer hypothetical questions. We thus need not determine the correctness of the trial court's order if the claim against Aramark was considered.

liability does not apply where the hirer contracts for the performance of a duty imposed by law. Hence, while an innkeeper may hire an independent contractor to perform the former's nondelegable duty, he (or she) may not pass off to an independent contractor the ultimate legal responsibility for the proper performance of that duty. Under the nondelegable duty rule, an innkeeper may be held vicariously liable for an independent contractor's failure to exercise reasonable care even if the innkeeper has himself exercised due care.

*Copeland,* 2000 OK 36, at ¶ 12, 4 P.3d at 700, (emphasis and notes omitted).

We are not alone in describing this duty to an invitee as nondelegable.

As one commentator points out, courts generally agree that the duty of a possessor of land to keep the possessor's premises in a reasonably safe condition for business invitees is a nondelegable duty. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 71, at 511–12 (5th ed.1984). See also 41 Am.Jur.2d *Independent Contractors* § 46, at 815 (1968); Thomas E. Miller, Annotation, *Storekeeper's Liability for Personal Injury to Customer Caused by Independent Contractor's Negligence in Performing Alterations or Repair Work,* 96 A.L.R.3d 1213, [1980 WL 130877] (1979). As one court has noted, the term "nondelegable duty" in this context is somewhat of a misnomer because "the owner is free to delegate the duty of performance to another, but he cannot thereby avoid or delegate the risk of nonperformance of the duty." *Rowley,* 305 Md. at 466, 505 A.2d at 499.

*Kragel v. Wal–Mart Stores, Inc.,* 537 N.W.2d 699, 703 (Iowa 1995).

This non-delegable duty is not new. "It is generally agreed that the obligation as to the condition of the premises is of such importance that it cannot be delegated, and that the occupier will be liable for the negligence of an independent contractor to whom he entrusts maintenance and repair." Prosser, *The Law of Torts,* § 61, at 395 (4th ed.1971), (citations omitted).

¶ 13 One court has explained in the following manner why landowners may not delegate ultimate legal liability to others.

The nondelegable duty of the property owners exception is premised on principles of basic fairness as well as policy considerations relating to allocation of the risk. An owner may be held vicariously liable for the negligence of its independent contractor because the owner in possession has retained control over the premises. . . . This affirmative responsibility is consistent with an owner's general duty of reasonable care under all the circumstances (*see Basso v. Miller,* 40 N.Y.2d 233, 386 N.Y.S.2d 564, 352 N.E.2d 868). Clearly it would be inequitable to permit a property owner to escape liability by merely delegating the obligation to repair or maintain the premises to an independent contractor. Moreover, the underlying policies of public safety and building owner responsibility provide a reasonable basis for imposing liability (*see Thomassen v. J & K Diner,* supra at 426–427, 152 A.D.2d 421, 549 N.Y.S.2d 416, *citing Koepke v. Carter Hawley Hale Stores,* 140 Ariz. 420, 682 P.2d 425; *see also Prosser and Keeton,* Torts § 71 at 509 [5th ed] ).

The broadest application of the nondelegable duty exception has been in those cases, such as here, where the owner owes a higher duty of care to a particular class of persons because of some special relationship imposed by statute or at common law (*see Sciolaro v. Asch,* 198 N.Y. 77, 83, 91 N.E. 263; *Harrington v. 615 West Corp.,* supra at 482, 161 N.Y.S.2d 106, 141 N.E.2d 602; *Ft. Lowell–NSS Ltd. Partnership v. Kelly,* supra at 100, 800 P.2d 962; Prosser and Keeton, Torts § 71 at 511–512 [5th ed]; Restatement of Torts, § 422[e] ). As is relevant to the issues on this appeal, New York courts have long imposed a special duty on property owners to keep the entrances and passageways of a public building safe for tenants, their visitors, and their employees, all classes of people who come onto the premises for reasonably foreseeable purposes (*see e.g. Murphy v. Broadway Improvement Co.,* 189 A.D. 692, 178 N.Y.S. 860; *Hume v. Ten Eyck,* 245 A.D. 794, 280 N.Y.S. 808; *Ancess v. Tre-*

buhs Realty Co., 18 A.D.2d 118, 238 N.Y.S.2d 560, affd. 16 N.Y.2d 1031, 265 N.Y.S.2d 909, 213 N.E.2d 318).

Backiel v. Citibank, N.A., 299 A.D.2d 504, 506–507, 751 N.Y.S.2d 492, 495, N.Y. Slip. Op. 08719 (N.Y.A.D. 2 Dept., 2002), (material and citations omitted).

In Oklahoma as well, the ingress and egress provided by a landowner to an invitee must satisfy the landowner's duty to such entrants. Jack Healey Linen Service Co. v. Travis, 1967 OK 213, 434 P.2d 924, 928; Pruitt v. Timme, 1959 OK 276, 349 P.2d 4, 5–6.

¶ 14 E–Z Mart argues that opinions discussing a landowner's non-delegable duties to invitees do not apply to E–Z Mart. This is so, it argues, because 1. third-party negligence is a defense to a premises liability claim and 2. Core–Mark was not an independent contractor. E–Z Mart also argues that Core–Mark is a "supplier" and not an independent contractor.

¶ 15 Core–Mark is in the business of providing floor mats and other products to businesses such as E–Z Mart. Once a week Core–Mark replaced E–Z Mart's soiled floor mat with a clean mat, and retrieved the soiled mat for cleaning at a location away from E–Z Mart. Trial Tr. at p. 354–355. Core–Mark provides the clean mats pursuant to a contract with E–Z Mart. E–Z Mart's petition against Core–Mark states that "Core–Mark was negligent in substituting a defective, undersized door mat in the place of those door mats which had been previously provided." Amended Third–Party Petition, O.R. at 7. On the motion for new trial E–Z Mart relied upon Keel v. Titan Construction Corporation, 1981 OK 148, 639 P.2d 1228, and argued that "Core–Mark's breach of contract is also negligence."

¶ 16 We have noted the general proposition that a tort defendant may predicate its defense on a non-party's negligence. PFL Life Ins. Co. v. Franklin, 1998 OK 32, n. 22, 958 P.2d 156, 164. This is known as "ghost tortfeasor" liability. Id. E–Z Mart relied on this, and similar authority, in its motion for new trial. E–Z Mart then combined the ghost tortfeasor theory with Porter v. Norton–Stuart Pontiac–Cadillac of Enid,

1965 OK 18, 405 P.2d 109, and argued that the alleged negligence of Core–Mark was an issue for liability to Thomas that a jury should determine.

¶ 17 We recently explained Porter in Johnson v. Hillcrest Health Center, Inc., 2003 OK 16, 70 P.3d 811.

Porter involved an indemnity suit between a car dealership and an instrument manufacturer for the injury to the dealership's customer. While an employee of the instrument manufacturer was working on a car, the car lurched forward and ran over the customer. The customer sued the dealership and the manufacturer for negligence. The Court recognized that regardless of whether the dealership failed to maintain a safe premises or failed to warn the customer, the sole cause of the injury was the act of the manufacturer's employee moving the gear selector from neutral to drive ... In Porter, the dealership's negligence, if any, was so far removed from the causal nexus between its negligence and the instrument manufacturer's negligence, that the Court held that it merely furnished a condition by which the injury was possible and a subsequent act caused the injury.

Johnson v. Hillcrest Health Center, Inc., 2003 OK 16, at n. 31, 70 P.3d 811, 820.

An examination of Porter must include the fact that it was an indemnity suit; that is, Porter involved the vindication of a right to equitable indemnity. This is important because the allocation of ultimate liability may be changed to a different party for the purpose of indemnity.

¶ 18 In Porter, Grayson Porter, an employee of Sun Electric was on the premises of a car dealership, Norton–Stuart, and while Porter was providing services to customers of the car dealership he caused an injury to one them, Frank Smith. We explained:

So far as the relationships of the parties are concerned, it is clear that as to Smith, Porter, whose actual negligence caused the accident, was the agent, servant or employee of Norton–Stuart. His presence on the premises was authorized by Norton–Stuart and he was doing the work which

Norton–Stuart had offered to Smith. At the time of the accident, he was working on the Smith automobile at the express direction of the Norton–Stuart shop foreman. So far as Smith was concerned, the right of control over Porter rested with Norton–Stuart. Norton–Stuart was therefore liable to Smith under the doctrine of respondeat superior.

However, *as between Norton–Stuart and Sun Electric,* Porter was clearly the agent, servant or employee of Sun Electric. He was present for the purpose of demonstrating Sun Electric equipment, and attempting to sell it. This agency was admitted by Sun Electric in its pleadings in the indemnity action. Being a corporation, Sun Electric could act only through its agents, servants or employees, and therefore the act of Porter was literally the act of Sun Electric. If, for instance, Smith had not been on the premises when Porter caused the automobile to lurch forward, and the injury had been confined to damage to the property of Norton–Stuart, there can be no doubt that Sun Electric would have been liable to Norton–Stuart under the doctrine of respondeat superior.

We hold that under the facts in this case, Norton–Stuart has a right to indemnity from Sun Electric.

*Porter,* 405 P.2d at 114–115, (emphasis in original).

We said that the landowner/occupier, Norton–Stuart (car dealership), was liable to Smith, an invitee, for Porter's act. The car dealership exercised control over Porter and its premises at the time Smith was injured. On the other hand, as between the car dealership and Sun Electric, Porter's act was that of Sun Electric and not that of the car dealership.

¶ 19 E–Z Mart also relied on *Employers Casualty Company v. Ideal Cement Company,* 1973 OK 59, 511 P.2d 1090. In this case Employers Casualty brought an action seeking indemnification for a settlement it paid to an injured person, Arvel Davis, for injuries caused by Ideal Cement on the premises of Dolese's concrete plant. The Court described joint tortfeasors, and stated in dicta

that "Dolese and defendants may have been jointly liable for the injuries sustained." *Id.* 511 P.2d at 1092. The court also cited *Porter* and discussed contribution between tortfeasors and when one defendant is constructively liable pursuant to the rule of respondeat superior. *Id.*

¶ 20 Indemnity is a right possessed by one who discharges a duty owed by that party, but which, as between that party and another, should have been discharged by the other. *Porter v. Norton–Stuart Pontiac–Cadillac of Enid,* 405 P.2d at 113. Indemnity occurs when one party has a primary liability or duty that requires that party to bear the whole of the burden as between certain parties. *Id.* This primary liability is not the result of fault, but a matter of allocation of risk, which is established by law. *Burke v. Webb Boats, Inc.,* 2001 OK 83, 37 P.3d 811. For example, in *Burke* we cited *Porter* for the proposition: "A master is entitled to indemnity from the servant where the negligence of the servant causes damage to a plaintiff but no fault is attributable to the master." *Burke,* at ¶ 10, 37 P.3d at 814.

¶ 21 E–Z Mart states that it sought to protect itself in the trial court by "joining in the action other parties who are potentially liable to the Appellant as joint tortfeasors." In *Kirkpatrick v. Chrysler Corp.,* 1996 OK 136, 920 P.2d 122, we said that: 1. Tortfeasors are thought of as joint tortfeasors when there is some concerted action on their part causing injury—when there is some common purpose or design; 2. Tortfeasors are classified as concurrent tortfeasors when their independent acts concur to produce a single or indivisible injury; and 3. In the case of joint tortfeasors some type of concert of action (or omission) is required, while in the case of concurrent tortfeasors such concert is lacking, but a single or indivisible injury or harm is nonetheless produced. *Id.* 920 P.2d at 126–127.

¶ 22 E–Z–Mart appears to be arguing that it has potential *partial* liability for the injury to Thomas based upon a premises liability claim; that is, E–Z–Mart shares the status

of tortfeasor with Core–Mark.[4] On the other hand, in its motion for new trial E–Z–Mart also relied on authority discussing indemnification and its associated principles of primary and secondary liability. We have explained that, generally, "In the case of concurrent or joint tortfeasors, having no legal relation to one another, each of them owing the same duty to the injured party, and involved in an accident in which the injury occurs, there is complete unanimity among the authorities everywhere that no right of indemnity exists on behalf of either against the other; in such a case, there is only a common liability and not a primary and secondary one, even though one may have been very much more negligent than the other." *National Union Fire Ins. Co. v. A.A.R. Western Skyways, Inc.,* 1989 OK 157, 784 P.2d 52, 55. (note omitted).

■■■ ¶ 23 An invitor is not an insurer of the safety of others and is not required to prevent all injury occurring on the property. *Taylor v. Hynson,* 1993 OK 93, 856 P.2d 278, 281. In *Taylor* we said that "An invitor cannot be held responsible unless it be shown that he/she had notice or could be charged with gaining knowledge of the condition in time sufficient to effect its removal or to give warning of its presence." *Id.*

¶ 24 In this case, the trial judge explained to counsel that "This trial is about what the defendant knew or should have known up until October 22nd [the date of the injury]." Thomas sought to impose premises liability based upon what E–Z Mart knew, or should have known, about the mats it was receiving from Core–Mark. Testimony at trial revealed that E–Z Mart changed the type of mats it was using two to three weeks prior to the date of Thomas' injury. A former employee of E–Z Mart testified about people walking on the mat prior the date of Thomas' injury, ". . . people would walk on it, and it would kind of slip with them a little bit, just enough to make them go ooh or oops or whatever." Tr. at 211. This same witness testified that more than one customer had complained about the mats. She testified that she reported the incidents to her supervisor. Thomas did not seek to impose liability on E–Z Mart based upon respondeat superior or some other theory of vicarious liability. Thomas sought a judgment based upon what E–Z Mart knew or should have known about the floor mat it was using on its premises.

¶ 25 On adjudication of the motion for a new trial, E–Z Mart argued that a invitor/defendant is always, as a matter of law, entitled to put before a jury a third-party's negligence as the cause of condition of the invitor's property that resulted in a plaintiff's injury. . We have pointed out that a landowner's duty may not be delegated in the sense that an invitor may be held liable for certain acts of its independent contractors. Allocation of the risk is placed on the invitor who is in control of its premises, including the injury-causing condition thereon, when the invitor either knew or should have known of its existence. *Burke v. Webb Boats, Inc., supra; Porter v. Norton–Stuart Pontiac–Cadillac of Enid, supra; Taylor v. Hynson, supra.*

¶ 26 A trial court has broad discretion in consolidating proceedings for trial when they involve common questions of law or fact. 12 O.S.2001 § 2018(C).[5] We have indicated that a jury may be confused when it simultaneously addresses different claims involving the same defendants and one claim requires a determination of negligence and other does not. *Graham v. Keuchel,* 1993 OK 6, 847 P.2d 342, 357. As we explained above, indemnification may shift liability to a different party. On the motion for new trial the parties did not address, nor did the trial court decide, whether appropriate jury instructions could prevent such confusion.

¶ 27 E–Z Mart maintains on certiorari that Core–Mark is not an independent contrac-

---

**4.** Although application of a contribution statute, 12 O.S.2001 § 832, is not at issue here, we note that use of the term "joint tortfeasor" is not appropriate when describing a party vicariously liable for another and applying § 832. *Burke v. Webb Boats, Inc.,* 2001 OK 83, ¶¶ 9–12, 37 P.3d 811, 814. *See also Sisk v. J.B. Hunt Transport, Inc.,* 2003 OK 69, n. 9, 81 P.3d 55, 57 (holding of *Burke* stated).

**5.** See note 1 *supra.*

tor.[6] We have said that "An independent contractor is one who agrees to perform a certain service without the control, supervision, or direction of his employer in all matters connected with the performance of the service except the result or product of the work." *Bouziden v. Alfalfa Elec. Co-op., Inc.*, 2000 OK 50, ¶ 12, 16 P.3d 450, 455. E–Z Mart relies upon *Page v. Hardy*, 1958 OK 283, ¶ 10, 334 P.2d 782, 784, and states that it must be followed to determine whether someone is an independent contractor. E–Z Mart argues on certiorari that applying *Page* factors, such as whether the parties believe they are creating the relationship of master and servant, shows that Core–Mark is not an independent contractor. These factors are used in *Page* to determine whether a party is an *employee or an independent contractor,* and are not entirely applicable to the present case. For example, whether E–Z mart and Core–Mark intended to enter into a master-servant (employer-employee) relationship does not address whether Core–Mark is an independent contractor apart from the creation of an employer-employee relationship.

¶ 28 Moving for a new trial, E–Z Mart claimed that it had a defense to a premises liability claim that was not heard by the jury. This defense, as put forward succinctly on certiorari, is that a third-party, with whom it does not have a special relationship (*e.g.,* employee or independent contractor), caused the negligence. As we have said, E–Z Mart has a duty the performance of which it may not delegate to escape risk of liability to an invitee. The motion for new trial did not address the evidence relating to whether the alleged defective mat was within the control of E–Z Mart or Core–Mark for the purpose of E–Z Mart providing ingress and egress for its customers. The trial court did not consider whether Core–Mark was an independent contractor. On the motion for new trial, E–Z Mart did not distinguish between its claim that Core–Mark was a joint tortfea-

sor and E–Z Mart's claim that it was entitled to indemnity, or whether appropriate jury instructions could prevent a jury from being confused on both claims when liability to Thomas was to be decided. The parties did not address whether a new trial was warranted *if* E–Z Mart was vicariously liable, and *if* so, whether the vicarious nature of its liability either required or made unnecessary a new trial on E–Z Mart's liability to Thomas. We decline to make these determinations in the first instance on appeal.

¶ 29 A motion for new trial that was granted will not be reversed on appeal unless the court "erred in its view of some unmixed question of law and that the new trial was granted because of such erroneous view of the law." *Claiborne v. Claiborne,* 1970 OK 48, 467 P.2d 157, 158, *quoting, Hillcrest Medical Center v. Wier,* 1962 Ok 158, 373 P.2d 45, 47. E–Z Mart's argument for a new trial was that its claim of a third-party's negligence involved with the injury-causing condition on its premises was a sufficient showing to warrant a new trial as to its liability to Thomas and for the jury to hear its contribution/indemnity claim. This is an erroneous view and the order granting the motion for new trial is reversed.

¶ 30 WATT, C.J., OPALA, V.C.J., LAVENDER, WINCHESTER and TAYLOR, JJ., Concur.

¶ 31 HARGRAVE, KAUGER, JJ., Concur in result.

OPALA, V.C.J., concurring.

¶ 1 I accede to the court's opinion and to the disposition made of this case. I write in concurrence to explain that analysis which persuades me to join today's pronouncement.

¶ 2 1) The **critical and dispositive issue** here is whether the trial court's grant of new trial is rested on a "pure error of law."[1] I agree that it is and that **it must be reversed.**

---

6. The term "supplier" occurs in various statutes and has various uses in tort jurisprudence. *See, e.g., Duane v. Oklahoma Gas & Elec. Co.,* 1992 OK 97, 833 P.2d 284, 286, (discussed a supplier's duty to warn of known dangers in the ordinary use of the supplier's product). E–Z Mart provides a general definition for the term but does

not show why, based on the facts in this case, a supplier may not also possess the legal status of an independent contractor.

1. When a judge's new-trial grant is rested on an error in resolving a "pure, simple, and unmixed question of law," it must be reversed. *Bishop's*

¶3 2) The trial court perceived that its refusal to allow the defendant to offer evidence of a third party's negligence was fatally erroneous. In this view **the trial judge was clearly mistaken for two reasons:**

¶4 a) *Qua* land possessor, the defendant owed the injured invitee an *ex delicto* duty that is nondelegable.[2] The possessor's **indivisible** liability may not be apportioned based upon the percentage of harm a nonparty actor may have inflicted upon the invitee in the same injurious event.[3] In short, in this invitee's tort suit brought **solely** against the land possessor,[4] the latter's **premises liability** cannot be subjected to comparison with that of any other actor or co-actor. Whether pressed in the same action or elsewhere, the land possessor's **own claim** against one alleged to have been a third-party actor in the very same occurrence may be prosecuted—**after** settlement or recovery by the invitee—in common-law indemnity,[5] for statutory contribution,[6] or upon **either or both** of these theories.

¶5 b) Even if erroneous, the evidentiary exclusion of a third party's negligence was **never preserved by a formal ruling fit for appellate review.** In the course of trial the land possessor failed to make the required proffer[7] of facts showing a third party's negligence.[8] Neither an *in limine* ruling nor any other nisi prius exclusionary action will ever preserve for appellate review an error in rejecting evidence tendered or sought to be adduced **unless** proof is offered in the course of trial, which is followed by an objection that stands sustained, and proffer of the excluded facts then follows for the record. Moreover, the courtroom scenario of the entire occurrence must be shown in the transcript of oral proceedings incorporated into the record for appeal.[9]

¶6 Put more simply, a party aggrieved **by any nisi prius exclusionary ruling,** whether *in limine,* tentative, formal or informal, must first seek to elicit the evidence judicially deemed as excludable and, when an objection to its admission is interposed and sustained, must then make a **proffer that outlines the proof** that would have been adduced had the objection not been sustained.[10]

*Restaurants, Inc. of Tulsa v. Whomble,* 1960 OK 44, ¶6, 355 P.2d 560, 563.

2.  A land possessor **is liable for all defects upon the land** because its duty to exercise reasonable care for the safety of an invitee is nondelegable. *Copeland v. Lodge Enterprises, Inc.,* 2000 OK 36, ¶12, 4 P.3d 695, 700; *Boyles v. Oklahoma Natural Gas Co.,* 1980 OK 163, ¶21, 619 P.2d 613, 619 (the land possessor has an "independent nondelegable duty" to prevent danger from its premises to persons on the sidewalk). Nondelegable duties are addressed in the Restatement (Second) of Torts §§ 416–425.

3.  If the principle of nondelegability is invoked, as it was done in this case, the land possessor's liability to the invitee clearly is **indivisible.**

4.  Having herself chosen the land possessor for imposition of premises liability as her lone adversary in the action, the plaintiff may not be barred from invoking the targeted defendant's nondelegable (indivisible) duty to the invitee.

5.  *Porter v. Norton–Stuart Pontiac–Cadillac of Enid,* 1965 OK 18, 405 P.2d 109.

6.  12 O.S.2001 § 832.

7.  BLACK'S LAW DICTIONARY 1090 (5th ed.1979) defines a "proffer" as "offer or tender, as, the production of a document and offer of the same in evidence." *Regier v. Hutchins,* 1956 OK 192, 298 P.2d 777, 782; *Hudson v. Blanchard,* 1956 OK 8, 294 P.2d 554, 563; *Taylor v. Davis,* 1947 OK 301, 199 Okl. 260, 185 P.2d 444, 445.

8.  *Regier, supra* note 7; *Hudson, supra* note 7; *Taylor, supra* note 7; 1 WIGMORE, EVIDENCE § 20a (Tillers rev.1983); 1 McCORMICK ON EVIDENCE § 51, at 215–17 (John W. Strong *et al.,* 5th ed.1999).

9.  *Myers v. Missouri Pacific R. Co.,* 2002 OK 60, ¶36, n. 66, 52 P.3d 1014, 1033 n. 66; *Braden v. Hendricks,* 1985 OK 14, 695 P.2d 1343, 1348–49; *Teegarden v. State,* 1977 OK CR 162, ¶¶8–9, 563 P.2d 660, 662 (though the motion *in limine* was properly made and argued before trial, the movant failed to preserve error for appellate review because he did not once again object to the testimony elicited at trial). A motion *in limine* is generally a pretrial device used to preclude prejudicial statements and questions which have no proper bearing on the issues in the case and which, if heard by the jury, would interfere with a fair and impartial trial. *Braden, supra* at 1348–49; *Teegarden, supra* at 662.

10.  A party who is aggrieved by a trial court's *in limine* ruling that suppresses proof sought to be introduced must, during the trial proceeding, elicit the desired proof through a witness from whom the facts may be adduced and, when the objection to the question is made and sustained, that party must—out of the hearing of the jury—make a proffer. The proffer consists of *outlining*

¶ 7 3) Land possessor's own claim brought against the third party in this action, if indeed actionable, is to be regarded as separate, distinct from, and unaffected by that pressed by the invitee. The latter clearly lies in tort,[11] the former may be viewed as in indemnity [12] or perhaps as one for statutory contribution.[13]

## SUMMARY

¶ 8 In sum, the record for this appeal, which so clearly falls short of demonstrating a flawed in-trial evidentiary ruling in the nisi prius exclusion of third party's negligence, **gives unequivocal support for the trial court's commission of a reversible error by granting the defendant a new trial.**[14]

¶ 9 The trial judge's exclusion of evidence that would have shown a third party's negli-

gence is **error free.** If proof of that negligence had been proffered during trial—after an objection by the plaintiff—the exclusionary ruling would not have been an error.[15] I am hence compelled to conclude, as the court does today, that the nisi prius new trial grant rests on a pure error of law. It cannot be allowed to stand.[16]

for the record the nature of the evidence that would have been given by the witness had she/he been allowed to answer the question to which the objection was sustained. It is in this manner that the trial court is afforded an opportunity to make its in-trial ruling upon the issue in contention. The last link in the chain to be followed in the preservation-of-error process is a transcript of the trial court proceedings incorporated into the record for appeal. **These are the** *sine qua non* **requirements for preserving for review an exclusionary ruling.** In short, an appellate court will not review error in excluding evidence unless the record for appeal reflects **all** necessary steps were taken for the quest of corrective relief. The trial court considered the plaintiff/invitee's request for an inquiry—outside the presence of the jury—on the admissibility of third-party negligence. The plaintiff moved to exclude any testimony (or argument by counsel) showing that a third party supplied a defective floor mat to the defendant's store. The motion was resisted on the ground that if the mat was defective, the testimony would show a third party failed to provide a quality mat and that the defendant lacked knowledge of the dangerous condition. No proffer followed when the court sustained the in-trial request for excluding proof of a third party's negligence. **None of the steps the defendant's lawyer took qualifies here as a substitute for, or functional equivalent of, a required evidentiary proffer.** The burden stood imposed on the defendant land possessor to proffer the excluded evidence in the course of trial. After the trial court's initial ruling that excluded the tendered evidence, the defendant's duty was to make a proffer. **There is**

here no record trail of either the plaintiff's formal objection to an attempted admission or of a proffer by the defendant of evidence deemed excludable.

11. *See, e.g., Boyles, supra note 2.*

12. *See, e.g., Porter, supra note 5.*

13. 12 O.S.2001 § 832.

14. *Bishop's, supra note* 1 at 563.

15. Even if a proffer had been made and the evidence barred by a ruling reviewable on appeal, there would have been here no error. The nondelegable nature of the defendant/land possessor's duty vis-a-vis the plaintiff/invitee removes from the case the presence of an apportionable tort liability.

16. When a judge's mid-trial error is given to support his/her new-trial grant and the appellate court decides there was no error, the new-trial order must be reversed. *Bishop's, supra note* 1 at 563; *Thomas v. Holliday,* 1988 OK 116, ¶ 11, 764 P.2d 165, 171 n. 23; *Dodson v. Henderson Properties, Inc.,* 1985 OK 71, ¶ 5, 708 P.2d 1064, 1065–1066. Conversely, when the record discloses a tenable legal ground for the trial court's action, its order granting a new trial must be affirmed. *Barnhart v. International Harvester Company,* 1968 OK 49, 441 P.2d 1000, 1004–1005; *Chapman v. Tiger,* 1960 OK 181, 356 P.2d 571, 580.