739 So.2d 132 (1999)
Deborah M. ANDREWS, John S. Andrews, Etc., et al., Appellants,
v.
William T. McGOWAN, David K. McGowan, et al., Appellees.
No. 98-2883.
District Court of Appeal of Florida, Fifth District.
July 16, 1999.
Rehearing and Certification Denied August 18, 1999.
*133 Christopher W. Boyden, North Palm Beach and Jack W. Shaw, Jr. of Shaw Stedman, P.A., Orlando, for Appellants.
Jamie Billotte Moses and Reinald Werrenrath III of Fisher, Rushmer, Werrenrath, Dickson, Talley & Dunlap, P.A., Orlando, for Appellee Levitt Weinstein Memorial Chapels, Inc.
Christopher C. Skambis and Brian J. Moran of Moran & Shams, P.A., Orlando, for Appellee Woodlawn Memorial Park, Inc.
No Appearance for Appellees McGowan.
COBB, J.
The issue presented by this appeal is whether, under Florida law, a surviving spouse who has been judicially separated by a final judgment of separate maintenance nevertheless retains the rights of burial and disposition of the remains of a deceased spouse. The trial court answered in the affirmative, granting motions for summary judgment filed by Levitt Weinstein Memorial Chapels, Inc. (Levitt Weinstein) and Woodlawn Memorial Park, Inc. (Woodlawn), the appellees herein.[1]
The appellants, with the exception of Deborah Andrew's husband, John Andrews, are all lineal descendants of the decedent, Evelyn McGowan, who died on July 12, 1996 as a domiciliary of Orange County, Florida. Evelyn and her husband, William T. McGowan, separated in 1993 after 40 years of marriage and never cohabited again. Evelyn resided in Orange County and William in Broward County. A final judgment of separate maintenance was entered by the Orange County Circuit Court in 1993. The final judgment ordered William to maintain existing health insurance coverage for Evelyn. William was also ordered to pay Evelyn monthly support.
In July 1993, Evelyn executed a will nominating her daughter, Deborah Andrews, as personal representative. No provision was made for her husband, nor for the disposition of her remains. On July 12, 1996, Deborah notified her father *134 by telephone of Evelyn's passing. Deborah further notified him that Woodlawn was handling funeral arrangements and that Woodlawn requested a written authorization from William for cremation since no final judgment of dissolution of marriage had been entered. William indicated he would cooperate. Deborah signed a contract with Woodlawn for cremation and Woodlawn took custody of Evelyn's body.
Later that day, David McGowan, Deborah's brother, contacted Deborah and demanded that he and his father, William, have a private viewing or "she would be sorry." Deborah advised that there would be no private viewing. William McGowan thereafter made arrangements through Levitt Weinstein to pick up Evelyn's body from Woodlawn for funeral and cremation services in South Florida. Pursuant to William's written authorization, Levitt Weinstein took possession of the decedent's body on July 13, 1996. Woodlawn released the body without obtaining Deborah's authorization. On July 15, 1996, a funeral service and viewing took place at Levitt Weinstein's West Palm Beach facility. The appellants were invited to attend but did not do so.
On July 16, 1996, Deborah Andrews and her brother, John McGowan, traveled to Levitt Weinstein's facility and demanded to view their mother's body. On Wednesday, July 17, 1996, Deborah filed in Palm Beach County Circuit Court a verified petition for return of decedent's remains and for injunctive relief. On July 19, 1996, an injunction was entered requiring Levitt Weinstein to deliver Evelyn's remains to Deborah and yielding jurisdiction for all future hearings to the Orange County Circuit Court. The cremated remains were returned to Deborah.
The appellants thereafter filed the instant lawsuit in Orange County Circuit Court setting forth counts alleging tortious interference with lawful rights of burial, conversion, intentional infliction of emotional distress, civil conspiracy, fraud and deceit and negligence. Levitt Weinstein and Woodlawn moved to dismiss. The motions to dismiss were granted without prejudice. In the dismissal order, Judge Sprinkel ruled that no Florida statutory or decisional law governed the unique facts of the case but that under case law from other states, a surviving spouse who is judicially separated from the decedent does not have the right to possession of the decedent's remains. The court nevertheless granted the motion so that an amended complaint could be filed to clarify the issue of standing (Deborah had originally sued in her capacity as personal representative rather than in her capacity as next of kin). Appellants filed a second amended complaint. Levitt Weinstein answered and moved to dismiss portions of the complaint. Woodlawn answered.
At some point the case was reassigned to Judge Conrad. Both Levitt Weinstein and Woodlawn moved for summary judgment. Judge Conrad granted both motions, ruling that section 470.002(18), Florida Statutes (1996), controls and that William McGowan had the right to determine burial and disposition of Evelyn's remains. This appeal ensued.
There are no material issues of disputed fact presented here. Rather, there is a dispute as to the applicable law. The appellants recognize that the general rule is that in the absence of testamentary direction to the contrary, a surviving spouse, followed by next of kin, has the lawful right to possession of the body of the deceased for burial or other lawful disposition. See State v. Powell, 497 So.2d 1188 (Fla.1986), cert. denied, 481 U.S. 1059, 107 S.Ct. 2202, 95 L.Ed.2d 856 (1987); Kirksey v. Jernigan, 45 So.2d 188 (Fla.1950); Dunahoo v. Bess, 146 Fla. 182, 200 So. 541 (1941); Jackson v. Rupp, 228 So.2d 916 (Fla. 4th DCA 1969), aff'd, 238 So.2d 86 (Fla.1970). The question presented concerns the effect, if any, of a separation decree on the surviving spouse's right to determine the disposition of the decedent spouse's remains. The appellants assert an absence of Florida law *135 on point and rely on out-of-state case law in support of their position that a separation decree divests the surviving spouse of the right to determine disposition. Woodlawn counters that out-of-state case law is irrelevant because section 470.002(18), Florida Statutes governs and gives the surviving spouse the power of disposition. It provides:
(18) "Legally authorized person" means, in the priority listed, the decedent, when written inter vivos authorizations and directions are provided by the decedent, the surviving spouse, son or daughter who is 18 years of age or older, parent, brother or sister 18 years of age or over, grandchild who is 18 years of age or older, or grandparent; or any person in the next degree of kinship. In addition, the term may include, if no family exists or is available, the following: the guardian of the dead person at the time of death; the personal representative of the deceased; the attorney-in-fact of the dead person at the time of death; the health surrogate of the dead person at the time of death; a public health officer; the medical examiner, county commission or administrator acting under chapter 245, or other public administrator; a representative of a nursing home or other health care institution in charge of final disposition; or a friend or other person not listed in this subsection who is willing to assume the responsibility as authorized person. (Emphasis added).
Woodlawn argues that this subsection creates a priority of rights regime for disposition of human remains (which is consistent with the Florida case law previously set out) and that Evelyn's remains were accordingly subject to disposition by her surviving spouse. Appellants challenge the application of the statute, arguing initially that its applicability was not timely raised but that, even if it was, the statute is simply part of the regulatory scheme for funeral homes and in no way was intended to decide, among survivors, the legal right to dispose of the remains of another.
The initial contention of the appellants lacks merit. It is predicated upon the fact that when Judge Sprinkel granted the initial motion to dismiss, he found that "Florida does not have a statute that governs the right to dispose of a decedent's body" and found out-of-state case law "persuasive authority for the premise that a surviving spouse who is separated from the decedent at the time of the decedent's death does not have the spousal right to possession of the decedent's remains." Judge Conrad, however, found section 470.002(18) controlling and appellants argue this violates concepts of law of the case and res judicata. Such concepts, however, apply only to final adjudications. See Albrecht v. State, 444 So.2d 8 (Fla. 1984). Interlocutory rulings are subject to reconsideration by the trial court prior to entry of a final order in the cause. Bettez v. City of Miami, 510 So.2d 1242 (Fla. 3d DCA 1987). Judge Conrad had the authority to revisit what he perceived to be an erroneous interlocutory legal ruling in the cause.
As to the merits of the application of section 470.002(18), appellants argue that the statute is merely regulatory in nature, that if the legislature intended to create a priority of rights of burial, it would have done so in our probate code, Chapters 732, 733, Florida Statutes. While there is some logic to this assertion,[2] an equally if not more compelling case could be made that section 470.002(18) was designed as much to give guidance to funeral home operators by clearly delineating the priority of those persons who are legally authorized to make funeral arrangements for a deceased person. The instant dispute would seem to be a classic *136 case for utilization of such a statute which provides clear and simple guidance to the funeral home operator. Necessary authorization can be determined quickly so that disposition of the decedent's remains can be accomplished expeditiously and with minimal disruption.[3]
Section 470.002(18) was designed to establish a priority of rights, and the appellants' contention that judicially separated spouses should be treated differently in this regard than other spouses is more properly taken up with the legislature, which can determine whether public policy warrants a differing treatment. It may be that the existence of an estrangement between spouses should warrant different treatment.
Some states recognize that where spouses have separated, the surviving spouse does not have the right to determine disposition of the decedent's remains. See, e.g., Dutton v. Brashears Funeral Home, 235 Ark. 120, 357 S.W.2d 265 (1962), Estes v. Woodlawn Memorial Park, Inc., 780 S.W.2d 759 (Tenn.App.1989); Rosenblum v. New Mt. Sinai Cemetery Ass'n, 481 S.W.2d 593 (Mo.App.1972). Perhaps the best summary of the state of the law on this issue is found at 22A Am.Jur.2d Dead Bodies § 23:
If the decedent and his spouse were living in the normal relations of marriage, a very strong case will be required to justify a court in interfering with the wish of the survivor, and a widow's waiver of the right to administer the estate of her deceased husband will not include a waiver of her right to control the interment of his body unless this right has been expressly waived. A different result will generally obtain if the decedent and his spouse were separated or divorced at the time of the decedent's death. In this regard, even though a surviving spouse who has been living apart from the decedent has some rights concerning the decedent's funeral and burial, and there is authority for the view that the estrangement or separation of a decedent from his spouse at the time of death is only one factor to be considered, along with relevant other circumstances, in the determination whether a widow will be awarded custody of her husband's body in contravention of his expressed preference, such estrangement or separation may nevertheless constitute a deciding factor in determination, upon weighing all the circumstances. Some courts have followed the view that, due to the separation of the decedent from the spouse, the right to control the burial no longer rests in the surviving spouse, the waiver of such right having been implied, in certain instances, from the separation.
In at least one jurisdiction, in order for an individual to defeat the surviving spouse's right to custody of the decedent's body for purposes of burial, he is statutorily required to show not only that the decedent and the spouse were separated at the time of the death, but also that the spouse had abandoned the decedent.
It would appear that, by definition, a person who has been divorced from the decedent is not a "surviving spouse" entitled, under applicable statutory provisions, to custody of the decedent's body for purposes of burial or disposal. [Footnotes omitted].
Under Florida statutory law, William McGowan, as lawful husband of the decedent, was the legally authorized person to direct the disposition of the decedent's remains. Thus, as a matter of law, Woodlawn is not liable to the appellants in tort.
*137 The summary judgment for Woodlawn Memorial is
AFFIRMED.
GOSHORN and GRIFFIN, JJ., concur.
NOTES
[1] This appeal has been stayed in respect to Levitt Weinstein which is in bankruptcy. This opinion, therefore, disposes only of the appeal of the summary judgment for appellee, Woodlawn.
[2] See, e.g., section 732.901, Florida Statutes, dealing with anatomical gifts (organ donations).
[3] Under Florida law a cremation may not be performed until a legally authorized person gives written authorization but once this is done, the cremation "must be performed within 48 hours after a specified time which has been agreed to in writing by the person authorizing the cremation." § 470.0255(1), Fla. Stat. This statute reflects that time is of the essence in matters such as cremation.