IN THE MATTER OF THE ESTATE OF DOWNING



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN THE MATTER OF THE ESTATE OF DOWNING

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN THE MATTER OF THE ESTATE OF DOWNING
2021 OK 17
489 P.3d 9
Case Number: 118589
Decided: 04/06/2021
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 17, 489 P.3d 9

 
 

IN THE MATTER OF THE ESTATE OF VANDELL DOWNING, DECEASED

APPEAL FROM THE DISTRICT COURT
OF OKLAHOMA COUNTY, STATE OF OKLAHOMA,
HONORABLE ALLEN WELCH

¶0 A dispute arose concerning control over a deceased individual's remains. The trial court ruled that testimony regarding Decedent's purchase of a burial plot and gravestone in 1966 was adequate evidence of a written document instructing the method and manner of handling his remains as outlined in 21 O.S. 2011 § 1158(1). In furtherance of this finding, the lower court entered a ruling compelling the surviving spouse, who was appointed as personal representative, to bury Decedent's body. Personal representative appealed, and this Court retained the matter. After reviewing the record and briefs, we now reverse the trial court's order granting injunctive relief, and hold the Movants failed to present sufficient evidence of a document executed by the Decedent that satisfies the requirements of § 1158(1). Accordingly, the trial court's order is reversed and the matter is remanded.

TRIAL COURT ORDER GRANTING INJUNCTION
REVERSED; MATTER REMANDED FOR ENTRY OF A 
JUDGMENT CONSISTENT WITH THIS OPINION.

Jeffrey I. Crain and Leann G. Farha, CRAIN & ASSOCIATES, P.L.L.C., Oklahoma City, OK, for Appellant

Sarita Downing, PRO SE. Oklahoma City, OK, for Appellee

GURICH, J. 

Facts & Procedural History

¶1 Vandell Downing (Decedent) and Maxine Bailey (Bailey) met in 1982, and shortly thereafter began living together. Decedent and Bailey lived together for thirty-six (36) years and had six (6) children during this time period. The two shared household responsibilities, payment of bills, and child-rearing duties. At some point during their relationship, Decedent gave Bailey a ring as a symbol of their marital status. The parties resided together as a couple in Midwest City, Oklahoma, until Decedent's death on April 4, 2018.

¶2 On April 13, 2018, Bailey, claiming she was Decedent's common-law wife, filed a petition seeking appointment as administrator of the estate.[1] Bailey alleged that Decedent may have prepared a final will, but her searches revealed no testamentary instrument. The court scheduled a hearing for May 8, 2018, and directed notice be served on all surviving heirs.

¶3 On April 18, 2018, three of Decedent's adult children, Sarita Downing, Vandella Downing, and Keith Williams (collectively "Movants") filed an application requesting an ex parte emergency temporary restraining order against Bailey and Pollard Funeral Home to prevent disposal of Decedent's body.[2] The lengthy filing alleged that Bailey was not Decedent's common-law spouse, and that it was Bailey's intention to cremate Decedent contrary to his expressed wishes. In their prayer for relief, Movants requested the court legally determine inter alia: (1) Bailey was not Decedent's common-law wife; (2) as surviving adult children, Movants were entitled to statutory control over Decedent's body; and (3) Bailey be restrained from disposing of Decedent's remains. On April 20, 2018, the trial court issued an ex parte emergency order which prohibited Bailey and Pollard Funeral Home from carrying out cremation of Decedent's remains. A hearing on the merits of Movants' application was scheduled by the trial judge and notice of the ex parte emergency order was served on the respective parties. In response, Bailey filed an objection and motion to dismiss the application for a restraining order. On April 25, 2018, counsel for each party appeared, and the temporary restraining order was kept intact pending further review at an upcoming hearing on Bailey's request to be appointed administrator of the estate.

¶4 On May 8, 2018, the parties appeared before the court for a hearing scheduled on both Bailey's petition seeking appointment as administrator and review of the temporary restraining order. Prior to the hearing, Movants filed a motion to dismiss and objection to Bailey's petition for appointment, arguing Bailey was not Decedent's common-law wife. Notwithstanding, testimony was taken and Bailey was appointed as personal representative in accordance with 58 O.S. 2011 § 122(1).[3]

¶5 Both parties appeared for the hearing on May 9, 2019. Although there were several matters to be presented, the focal point of the hearing and salient issue for the court's inquiry, was whether Bailey was the common-law wife of Decedent. During the hearing, Bailey testified that the couple began acknowledging their marital status following Decedent's gift of a ring. Furthermore, Bailey presented evidence supporting the couple's joint payment of household bills, declarations of their marriage to third-parties, and routine celebration of their wedding anniversary. Bailey was covered under Decedent's government-issued health insurance. Family obituaries reflected Decedent and Bailey were husband and wife. In opposition, Movants admitted into evidence an instrument dated nearly thirty (30) years prior to Decedent's death, signed by both Decedent and Bailey, stating the couple no longer claimed rights under common-law marriage.[4] In response, Bailey testified that the Decedent created the document following a hostile dispute, the document was not an accurate legal representation of their marital status, and the couple thereafter continued to act as husband and wife.

¶6 On the issue of which party should control Decedent's remains, Movants presented testimony that detailed the Decedent's purchase of a burial plot and his alleged desire to be buried. Testimonial evidence consisted solely of general statements describing Decedent's opposition to cremation, his purchase of a headstone and burial plot more than fifty (50) years before his death, and alleged statements by the Decedent showing his desire to be buried. Furthermore, Movants claimed that a deed and contract supporting Decedent's purchase of a burial plot was available, but such documentation was never offered as evidence.[5] During the evidentiary hearing, counsel for Movants attempted to admit an exhibit relating to an inventory of Decedent's safe-deposit box, conducted at Tinker Federal Credit Union on July 13, 2018. However, the trial court sustained a hearsay objection to admission of the exhibit.[6] Despite having copies of the actual physical documents contained in the safe-deposit box, Movants never sought to admit those records into evidence. Similarly, Movants argued Decedent had purchased burial insurance, but they never presented a copy of such a policy. In fact, no documentary evidence establishing Decedent's desire to be buried was admitted into evidence. Finally, Movants placed great emphasis on the fact that Decedent was Jewish and that Bailey had converted to Judaism, as evidence of his intent to be buried rather than cremated.[7]

¶7 The trial judge issued a detailed letter-ruling that outlined his findings of fact and conclusions of law on December 20, 2019.[8] Simultaneously, the judge entered a formal journal entry memorializing the dispositive issues. Therein, the lower court found that "[Downing] and the Decedent were parties to a common law marriage, and that by the authority just mentioned, the Petitioner is the Decedent's surviving widow."[9] Further, the ruling concluded that in accordance with 21 O.S. 2011 § 1158(1), "Decedent executed a written document which indicated his desire [to be buried], the contract whereby he purchased his burial plot."[10] Thus, notwithstanding the finding that Bailey was Decedent's surviving widow, the district court found that the testimony regarding Decedent's contract to purchase a burial plot "is in accord with 21 O.S. § 1151(A), in that the Decedent thereby made arrangements regarding the manner in which his body shall be disposed."[11] Granting a final restraining order, the trial court instructed Bailey to carry out the burial of Decedent's body in accordance with the relevant statutory provisions.

¶8 Bailey timely filed her appeal from the trial court's journal entry, and we retained the matter to address the proper reading of 21 O.S. 2011 § 1158. Sarita Downing (hereinafter "Appellee") was the only Movant to enter an appearance and file a brief in this appeal.

Standard of Review

¶9 At issue in this interlocutory appeal is whether the trial court erred in granting Movants' request for injunctive relief. A judgment issuing or refusing to issue an injunction will not be disturbed on appeal unless the lower court has abused its discretion or the decision is clearly against the weight of the evidence. Sharp v. 251st St. Landfill, Inc., 1996 OK 109, ¶ 4, 925 P.2d 546, 549. Pursuant to 12 O.S. 2011 § 952 (b)(2), we may reverse, vacate, or modify a judgment of the district court, where on review it appears from the nature of the case and all the facts properly before the Court, that the plaintiff was not entitled to injunctive relief. Brown ex rel. Brown v. Okla. Secondary Sch. Activities Ass'n, 2005 OK 88, ¶ 11, 125 P.3d 1219, 1225 (footnotes omitted). Entitlement to injunctive relief must be established by clear and convincing evidence. Sharp, ¶ 5, 925 P.2d at 549. Oklahoma law allows for injunctive relief in accordance with 12 O.S. 2011 § 1381. The "grant or denial of injunctive relief are of equitable concern," Dowell v. Pletcher, 2013 OK 50, ¶ 5, 304 P.3d 457, 460, and relief should not be granted where there is a full and adequate remedy at law. Marshall v. Homier, 1903 OK 84, ¶ 3, 74 P. 368, 369. Injunctive relief is "an extraordinary remedy that should not be granted lightly." Dowell, ¶ 6, 304 P.3d at 460.

¶10 When evaluating a trial court's ruling relating to injunctive relief, an examination of legal conclusions is essential. Scott v. Okla. Secondary Sch. Activities Ass'n, 2013 OK 84, ¶ 16, 313 P.3d 891, 896. Our review of a lower court's legal conclusions pertaining to injunctive relief focuses on whether such ruling was clearly erroneous. Thomas v. E-Z Mart Stores, Inc., 2004 OK 82, ¶ 7, 102 P.3d 133, 136. We assess such legal decisions under a de novo and non-deferential standard. Id. In exercising de novo review, "this court possesses plenary, independent, and non-deferential authority to examine the issues presented." Benedetti v. Cimarex Energy Co., 2018 OK 21, ¶ 5, 415 P.3d 43, 45.

Analysis

¶11 Bailey raises a number of alleged errors in this appeal, however, our opinion addresses only whether the trial court abused its discretion by awarding injunctive relief. Ultimately, our resolution of this question hinges on the trial court's statutory interpretation of 21 O.S. 2011 §§ 1151 and 1158, and application of those statutes to the facts and evidence presented. As noted, the trial judge determined that Decedent satisfied the statutory requirements in 21 O.S. 2011 § 1158(1), by executing a written document that meets the requirements of the State of Oklahoma. Accordingly, the trial court ordered Bailey to proceed with burial of Decedent's body. This ruling was fatally flawed because there is simply no evidence in the record of any executed written document assigning responsibility for or directing the manner/method of disposing of Decedent's remains.

¶12 An individual has the right to direct the manner of disposing his or her body. 21 O.S. 2011 § 1151(A).[12] Section 1151(A) does not provide any precise guidance for how such directive is accomplished; however, 21 O.S. 2011 § 1158(1) fills in this gap by setting forth specific requirements. Section 1158 reads as follows:

The right to control the disposition of the remains of a deceased person, the location, manner and conditions of disposition, and arrangements for funeral goods and services vests in the following order, provided the person is eighteen (18) years of age or older and of sound mind:

1. The decedent, provided the decedent has entered into a pre-need funeral services contract or executed a written document that meets the requirements of the State of Oklahoma;

2. A representative appointed by the decedent by means of an executed and witnessed written document meeting the requirements of the State of Oklahoma;

3. The surviving spouse;

4. The sole surviving adult child of the decedent whose whereabouts is reasonably ascertained or if there is more than one adult child of the decedent, the majority of the surviving adult children whose whereabouts are reasonably ascertained;

5. The surviving parent or parents of the decedent, whose whereabouts are reasonably ascertained;

6. The surviving adult brother or sister of the decedent whose whereabouts is reasonably ascertained, or if there is more than one adult sibling of the decedent, the majority of the adult surviving siblings, whose whereabouts are reasonably ascertained;

7. The guardian of the person of the decedent at the time of the death of the decedent, if one had been appointed;

8. The person in the classes of the next degree of kinship, in descending order, under the laws of descent and distribution to inherit the estate of the decedent. If there is more than one person of the same degree, any person of that degree may exercise the right of disposition;

9. If the decedent was an indigent person or other person the final disposition of whose body is the financial responsibility of the state or a political subdivision of the state, the public officer or employee responsible for arranging the final disposition of the remains of the decedent; and

10. In the absence of any person under paragraphs 1 through 9 of this section, any other person willing to assume the responsibilities to act and arrange the final disposition of the remains of the decedent, including the personal representative of the estate of the decedent or the funeral director with custody of the body, after attesting in writing that a good-faith effort has been made to no avail to contact the individuals under paragraphs 1 through 9 of this section.

(emphasis added). We recently examined § 1158 in In re Estate of Foresee, 2020 OK 88, ¶ 8, 475 P.3d 862, 865. Like in Foresee, we are again faced with a dispute concerning which individual is given statutory priority over a deceased's remains. Bailey contends there was insufficient evidence to establish Decedent entered into a pre-need funeral services contract or a written document executed in accordance with Oklahoma law. Bailey further maintains that a contract for the purchase of burial plots, deeds for such plots, or a receipt relating to the purchase of a headstone, do not satisfy the evidentiary requirements set forth in 21 O.S. 2011 §§ 1151 and 1158(1). Appellee counters that the testimonial evidence confirmed Decedent's desire to be buried; and therefore, the trial court correctly determined Decedent had executed a written contract controlling the disposition of his remains as required in § 1158(1).

¶13 When examining statutory enactments, this Court's primary goal is to determine legislative intent through the "plain and ordinary meaning" of the statutory language. Kohler v. Chambers, 2019 OK 2, ¶ 6, 435 P.3d 109, 111. We will only employ rules of statutory construction when legislative intent cannot be ascertained (e.g., in cases of ambiguity). Christian v. Christian, 2018 OK 91, ¶ 5, 434 P.3d 941, 942. Our test for determining the ambiguity of a statute depends on whether its language is susceptible to more than one meaning. Id., ¶ 5, 434 P.3d at 942-43.

¶14 The phrase "pre-need funeral services contract" is not defined anywhere in Oklahoma's statutes, however, there are references to "contracts for prepaid funeral benefits"[13] and "funeral service agreements."[14] In fact, 21 O.S. 2011 § 1158b discusses certain legal documentation executed by a decedent which can be relied on by a funeral establishment "to carry out the instructions of the person . . . [who] holds the right of disposition." Section 1158b refers to the signing of a "funeral service agreement, cremation authorization form, or any other authorization for disposition . . . ." Pre-paid funeral arrangements are subject to significant regulation across the country, and Oklahoma is no exception. In this state, prepaid funeral services are supervised through the Insurance Commissioner. 36 O.S. Supp. 2013 § 6123. In fact, the Oklahoma Insurance Code specifically mandates that "[a]ll contracts for prepaid funeral benefits shall be in writing and no contract form shall be used without first being approved by the Insurance Commissioner." Id.[15] The record does not contain any kind of written agreement, executed by Decedent, which relates to prepaid funeral services. Therefore, Movants failed to establish the existence of such a contract as set out in the first clause of 21 O.S. 2011 § 1158(1).

¶15 Title 21 O.S. 2011 § 1158(1) also allows a decedent to control disposition of his or her remains by executing a written document in accordance with the laws of Oklahoma. Again, this phrase has not been specifically defined by the legislature. While Appellee maintains that testimonial evidence of a contract and/or deeds for burial plots, allegedly purchased by Decedent, are enough to satisfy § 1158(1), we conclude the statute requires more. To establish the right to injunctive relief in this case, § 1158(1) required introduction of an actual written document, executed by the Decedent in accordance with Oklahoma law. Further, such document must have either assigned responsibility for Decedent's body to a specific individual, or provided express instructions on the method and manner of disposition of his remains.[16] 21 O.S. 2011 §§ 1151(A) and (B), 1158(1).[17] The record does not include copies of any contract, deeds to burial plots, or other similar documentation directing the method/manner of disposing of his remains or assigning responsibility for those remains to an individual. Consequently, we have no way to ascertain whether Decedent even "executed" any kind of document, and such execution is clearly mandatory to invoke the second clause in § 1158(1). Moreover, ownership of a burial plot does not definitively establish that an individual has chosen interment over cremation.

¶16 Appellee has alleged that as a member of the Jewish faith, Decedent would have preferred burial to cremation. However, as we have already noted, an individual's preference concerning the handling of their body after death is not controlling unless such intent was reduced to writing and satisfied the express requirements of §§ 1151(B) or 1158(1)--that a deceased individual specifically set forth his or her intent in a writing which satisfies the statutory language.[18]

¶17 A document assigning control over a decedent's body or directing the method/manner of disposal is analogous to a testamentary instrument such as a last will and testament. Oklahoma imposes strict requirements for executing a will and admitting the same to probate. For example, 84 O.S. 2011 § 55 requires a will to be evidenced in writing.[19] This section codifies the legislative policy of requiring submission of the physical will itself, or at least a photocopy.[20]

¶18 Where a written document is material to support the issues in a case, the original writing itself is the best evidence for proving the content of such document. Under 12 O.S. 2011 § 3002, "[t]o prove the content of a record, recording or photograph, the original record, recording or photograph is required except as otherwise provided in this Code or by other statutes." The statute's "except as otherwise provided" language then directs us to 12 O.S. 2011 §§ 3003 and 3004. Title 12 O.S. 2011 § 3003 allows for the admission of duplicates, however, this exception is inapposite to the present case as no documents are contained in the record on appeal. Title 12 O.S. 2011 § 3004 also allows for avoidance of the original record requirement if certain circumstances are met; however, subsection (4) only permits secondary evidence to establish an original record when the particular document is not closely related to a controlling issue.[21] Here, the written document is the controlling issue. The record reflects that copies of the subject contracts and deeds relating to burial plots were available, but they were never offered as evidence.

¶19 To establish entitlement to injunctive relief under 21 O.S. 2011 § 1158(1), Movants were obligated to admit into evidence either a pre-need funeral services contract or a written document executed by Decedent in accordance with the laws of Oklahoma. However, no documentary evidence was entered into evidence by Movants at the hearing, and the lower court relied exclusively on mere testimony that a fifty-year-old contract for the purchase of a burial plot existed without accounting for its absence. Consequently, the evidence was wholly insufficient to establish the prerequisites of either §§ 1151 or 1158(1). As such, the lower court's decision to impose injunctive relief was an abuse of discretion. See Bd. of Regents of Univ. of Okla. v. Nat'l Collegiate Athletic Ass'n, 1977 OK 17, ¶ 20, 561 P.2d 499, 508.

Conclusion

¶20 Considering the relevant statutory provisions and the record before us, we conclude that the trial judge abused his discretion in awarding injunctive relief. Consequently, the trial court's decision granting injunctive relief is reversed. The matter is remanded for continuation of the probate proceedings in a manner consistent with this opinion.

TRIAL COURT ORDER GRANTING INJUNCTION
REVERSED; MATTER REMANDED FOR ENTRY OF A 
JUDGMENT CONSISTENT WITH THIS OPINION

Kauger, Edmondson, Combs (by separate writing), Gurich and Rowe (by separate writing), JJ., concur;

Darby, C.J. (by separate writing), Kane, V.C.J. (by separate writing) and Winchester, JJ. , dissent.

FOOTNOTES

[1] Although the facts were largely disputed below, for purposes of this appeal, we adopt the trial court's factual findings on the issue of common-law marriage. Because the trial court's ruling regarding Decedent and Bailey's common-law marriage is not before us as an interlocutory appeal, any findings regarding marital status are not preclusive. See Powell v. Powell, 1942 OK 417, ¶ 8, 131 P.2d 1019, 1021.

[2] Sarita Downing and Vandella Downing are children from Decedent's former marriage to Willie Jean Fredericks. (Tr. May 10, 2019, p. 182). Keith Williams is Decedent's son from a relationship with Charlotte Donahue. (Tr. May 10, 2019, p. 157).

[3] The order appointing Bailey as personal representative does not mention the temporary restraining order; however, it is clear from the original record that Judge Welch's initial restraining order remained in effect pending an adversarial hearing on the merits. The trial court entered a scheduling order, and reserved hearing dates on May 9-10, 2019, to resolve the common-law marriage question and whether to issue a final restraining order.

[4] Submission of this document actually served the opposite of its intended effect. The agreement clearly acknowledged the parties' marriage; thus, absent a valid and final court order dissolving the marriage, the parties would have remained in a connubial status. See In re Estate of Brown, 2016 OK 112, ¶ 10, 384 P.3d 496, 499.

[5] Movant/Appellee Sarita Downing testified that documents produced during litigation included a contract executed in November 1966 for the purchase of several burial plots in Memorial Garden Cemetery. (Tr. May 17, 2019, pp. 65-67).

[6] Movant/Appellee Sarita Downing filed a motion substantially out of time, requesting this Court allow supplementation of the appellate record to include the TFCU Joint Inventory filed in the underlying probate case. Appellant filed a motion objecting and seeking to strike Appellee's out of time attempt to add the inventory to the appellate record. Appellee's motion is denied, thereby rendering Appellant's motion moot. Even assuming arguendo, such documents were part of the record, it would not establish either of the statutory prerequisites in § 1158(1). The document was prepared post-mortem, did not constitute a pre-needs funeral services contract, and could not constitute a writing executed by the decedent.

[7] Curiously, the emergency ex parte restraining order claimed that the heirs planned to give Decedent a "proper Christian funeral." (Ex Parte Emergency Temporary Restraining Order, O.R. at 23-31). There was additional conflicting testimony regarding Decedent's religious faith, yet, none of this testimony is beneficial to answering the statutory question presented in this case.

[8] Judge Welch's twenty-four page letter-ruling reflected the court's sensitivity to the important issues before him, and further demonstrated the meticulous and time-consuming effort undertaken to reach a conclusion.

[9] Journal Entry, O.R. at 92.

[10] Journal Entry, O.R. at 93.

[11] Journal Entry, O.R. at 93.

[12] Title 21 O.S. 2011 § 1151 provides in relevant part:

A. Any person has the right to direct the manner in which his or her body shall be disposed of after death, and to direct the manner in which any part of his or her body which becomes separated therefrom during his or her lifetime shall be disposed of. The provisions of Section 1151 et seq. of this title do not apply where such person has given directions for the disposal of his or her body or any part thereof inconsistent with these provisions.

B. A person may assign the right to direct the manner in which his or her body shall be disposed of after death by executing a sworn affidavit stating the assignment of the right and the name of the person or persons to whom the right has been assigned.

[13] 36 O.S. Supp. 2016 § 6121(A); 36 O.S. Supp. 2013 § 6123.

[14] 21 O.S. 2011 § 1158b.

[15] Prepaid funeral benefits are described as "prearranged, or prepaid funeral services, or funeral service merchandise as defined in the Funeral Services Licensing Act or for any contract providing future funeral services or funeral merchandise at a fixed price or at a cost plus a percentage, or at retail price less a percentage discount, or providing for any special consideration of any kind to be granted or made available to the purchaser or holder of such contract, in this state, under any sales contract, bond, certificate or other form of written document providing for prepaid, discounted or otherwise specially priced funeral or burial benefits or services or funeral merchandise to be delivered at an undetermined future date dependent upon the death of a contracting party or other person designated by a contracting party." 36 O.S. Supp. 2016 § 6121.

[16] Such document could both nominate a specific person and provide detailed directions for the disposition of a decedent's remains.

[17] It is important to briefly discuss our holding in Foresee as it relates to the present matter. As we noted in Foresee, for a decedent to effectively assign control of his or her remains and/or to direct the manner of disposing of those remains, 21 O.S. 2011 § 1151 requires a written document which expressly names a designated individual and/or provides express directions for disposing of his or her body. Id. ¶ 12, 475 P.3d at 866. Such specificity is not required or necessary, however, for an individual to be afforded statutory priority under § 1158(2)--(10). Id. ¶¶ 16-18, 475 P.3d at 867-68. These subsections are merely in place to ensure someone is vested with authority of a deceased individual's body if the decedent has not nominated a person or provided express instructions.

[18] Section 1151(B) allows assignment of the right to control disposition of a deceased individual's body only through executing a sworn affidavit. On the other hand, § 1158(1) allows the decedent to direct the manner of disposition through either a pre-needs funeral services contract or some other written document executed under the laws of the State of Oklahoma.

[19] Under 84 O.S. 2011 § 55, "[e]very will, other than a nuncupative will, must be in writing." A nuncupative will is an oral will, which is permissible where estates are valued at no more than one-thousand dollars ($1,000.00). Taylor, V. H., 1 Okla. Prob. Law & Prac. § 7.1 (3d ed. 2020) (referencing 84 O.S. 2011 §§ 46, 51).

[20] See 58 O.S. 2011 § 82 (allowing for photocopy of will in some circumstances).

[21] Title 12 O.S. 2011 § 3004 provides:

The original is not required, and a duplicate or other evidence of the contents of a record is admissible if:

1. All originals are lost or have been destroyed unless the proponent lost or destroyed them in bad faith;

2. No original can be obtained by any available judicial process or procedure;

3. At a time when an original was under the control of the party against whom offered, the party was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearings and the party does not produce the original at the hearing; or

4. The record is not closely related to a controlling issue.

 

 

COMBS, J., concurring:

¶1 Title 21 O.S.2011, §1158 (1) provides that a decedent may control the disposition of his or her remains by way of a "pre-need funeral services contract" or by the execution of "a written document that meets the requirements of the State of Oklahoma." The former is an undefined term and the latter leaves much room for ambiguity. The majority opinion notes that at least some written document executed by the decedent is required to establish directions for disposition of the remains. Here, the problem was evidentiary and we have not clearly decided whether or not a contract for the purchase of a burial plot would have satisfied § 1158(1) if one had been presented.

¶2 The language in § 1158(1) needs clarification. The language in 21 O.S.2011, § 1151(A) expressly states a person has the right "to direct the manner in which his or her body shall be disposed." Other jurisdictions have similar priority lists as the one found in § 1158. The State of Florida has provided that the decedent's wishes may be evidenced by written inter vivos authorizations and directions. See Andrews v. McGowan, 739 So. 2d 132, 135 (Fla. Dist. Ct. App. 1999); Fla. Stat. Ann. § 497.005(43)(a) (West 2016). Such language would at least require 1) a written document, and 2) directions concerning the disposition of the decedent's remains. The current language in § 1158(1) is insufficient for determining what type of document and what content must be included in order to discern the intent of the decedent. These shortcomings in the current statutory language must be addressed by the Oklahoma Legislature. It is the Legislature's role as policymakers to provide guidance and direction to the Oklahoma public in order to allow an individual to make a knowing and clear direction for disposition of his or her remains.

 

 

ROWE, J., concurring:

¶1 The manifest purpose of the statute is to place someone in control of a decedent's remains so that burial may be accomplished expeditiously and in accord with the decedent's wishes, if known. To find that the Decedent retained the right to control the disposition of his remains due to the claimed existence of either a funeral services contract or other written document--neither of which were produced--would lead to a result that renders the statute ineffective. A textually permissible interpretation that furthers the statute's purpose should be favored over another plausible interpretation that obstructs that purpose.[1]

 

FOOTNOTES

 

[1] Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 63 (2012).

 

 

DARBY, C.J., with whom Kane, V.C.J., and Winchester, J., join dissenting:

¶1 I respectfully dissent. I would affirm the trial court's ruling that the Decedent shall be buried, but under authority of title 21, section 1151(A) instead of section 1158(1). I would also affirm the trial court's ruling that the Personal Representative of the Estate would be next in line under section 1158(2) to control the disposition of Decedent's remains, the location, manner and conditions of disposition, and arrangements for funeral goods and services.

¶2 Less than one year ago this Court ruled in the case of In re Estate of Foresee, 2020 OK 88, ¶¶ 15--17, 475 P.3d 862, 867--68, that we must interpret title 21, section 1151 and section 1158 independently. The majority does not follow the principle of Foresee and is wrong to hold in this case that:

Section 1151(A) does not provide any precise guidance for how such directive is accomplished; however, 21 O.S.2011 Section 1158(1) fills in this gap by setting forth specific requirements.

Majority Op. ¶ 12 (emphasis added). In Foresee, the appellant asked this Court to incorporate section 1151(B) into section 1158(2) by implication. We held that this would render section 1158(2) both "redundant and superfluous." In re Estate of Foresee, 2020 OK 88, ¶¶ 15--16, 475 P.3d at 867. Foresee provided,

In addition, § 1158 does not reference § 1151. In fact, a reading of the version of 21 O.S. § 1158, in effect prior to the last legislative amendment, solidifies our reading of the statute. Before being amended the statute read as follows:

The duty of burying the body of a deceased person devolves upon the persons hereinafter specified:

1. The person or persons designated in subsection B of Section 1151 of this title. 

. . . .

(emphasis added). If the Legislature had intended to limit the priority afforded in § 1158(2) to instruments executed in accordance with § 1151(B), it could have easily done so by leaving the reference to § 1151 in the statute.

Id. ¶ 17, 475 P.3d at 868 (footnote omitted).

¶3 The issue in this case is whether Decedent satisfied the requirements of section 1151. And he most certainly did.

¶4 The record reflects that on multiple occasions Decedent expressed his desire to be buried after death. Section 1151, as noted by the majority, "does not provide any precise guidance for how such directive is accomplished." Majority Op. ¶ 12. This makes perfect sense because section 1151 recognizes the right of any person to direct the manner in which his or her body shall be disposed of after death. Section 1151 does not reference section 1158 as a limitation on how the decedent may direct the manner in which his body shall be disposed of after death.

¶5 Also, section 1151 only concerns the manner in which the body shall be disposed of. The manner used to dispose of the body of a deceased person can only mean "how" the task will be accomplished -- in blunt terms, what is to be done with the body. And the Legislature provided no guidance on what is required to direct the manner of disposition of one's own body; so we employ rules of interpretation. Title 25, section 29 tells us that we should liberally construe the statute to effect its object. The object of section 1151(A) is the decedent's ability to direct the manner of disposition of his remains. To find section 1151(A) is subject to section 1158(1) here would both imply words into the statute and make section 1151(A) redundant and superfluous.

¶6 It doesn't matter that the living in this case cannot agree whether to bury or cremate the body. The decision is not theirs to make because the Decedent "directed" what was to be done with his body. Decedent wanted to be buried, and the trial court so found.

¶7 The record clearly supports this ruling. Decedent many times orally directed that his body was to be buried, and the agreement for the cemetery plots and the deeds to those plots provide further evidence of Decedent's directive.

¶8 In its analysis in paragraph 19, the majority says, "To establish the right to injunctive relief in this case, Section 1158(1) required introduction of an actual written document, executed by the Decedent in accordance with Oklahoma law." Not so. First of all, section 1151 does not require that the Decedent's directive be in writing.

¶9 Second, section 1158 does not apply, and even if it did, it does not mandate that such a written document must be introduced into evidence. The majority essentially does what we refused to do in Foresee; it incorporates section 1158 into section 1151(A) by implication.

¶10 Third, title 12, section 3007 provides:

Contents of a record may be proved by the testimony or deposition of the party against whom offered or by that party's written admission without accounting for the nonproduction of the original.

Maxine acknowledged in her trial testimony that the agreement and the deeds were part of the contents of the Decedent's safety deposit box.

¶11 Fourth, the joint inventory of the contents of the safety deposit box, written by Maxine in her own free hand, lists the agreement and the deeds. The trial court could and did obviously take judicial notice of the joint inventory which is part of the probate file.

¶12 I will stop there. All the wrestling in the majority opinion about the fact the heirs did not offer into evidence the written agreement or the deeds is needless fog.

¶13 I realize that some people cremate the body and bury the ashes of a loved one. Nothing in the record supports a finding that Decedent directed that his remains be first cremated then buried.

¶14 Finally, section 1158 concerns much more and something much different than section 1151. Section 1158 deals with who shall be allowed to "control" all of the following: "the disposition of the remains of a deceased person, the location, manner and conditions of disposition, and arrangements for funeral goods and services." Black's defines "control": "Power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee." Control, Black's Law Dictionary 298 (5th ed. 1979). A decedent may only "control" from the grave by having established by written agreement some form of pre-need funeral plan or some other type of contract. Decedent did not satisfy the requirements of section 1158, but he clearly satisfied the requirements of section 1151 by directing that his non-cremated body be buried.

¶15 The trial court honored Decedent's clearly expressed desire and direction that his body be buried. This Court should do the same. That is why I dissent.

 

 

KANE, V.C.J., with whom Winchester, J. joins, dissenting:

¶1 Based upon conflicting facts, the trial court issued a carefully considered ruling after receiving all of the evidence, finding that decedent retained control over the disposition of his remains. That judgment should not be disturbed absent a misapplication of law or a showing of an abuse of discretion. Contrary to Appellant's assertions, the evidence received by the trial court was in accord with our statutes, and was admissible to determine the decedent's true wishes as to the disposition of his remains following his passing. Those wishes should be honored.

¶2 Based upon conflicting testimony, the trial court found (in a thorough 24-page letter ruling) that Appellant was the decedent's common law wife. The trial court then needed to determine who had the right to control the disposition of the decedent's remains. See 21 O.S.2011 § 1158. Under the statute, every citizen is afforded first opportunity to control disposition over his/her remains by meeting the statutory standard, and upon failure to do so, the surviving spouse is statutorily entitled to make the disposition. Id.

¶3 The above-cited statute states that the decedent retains control over the disposition of his/her remains "... provided the decedent has entered into a pre-need funeral services contract..." 21 O.S.2011 § 1158(1) (emphasis added). Appellant wrongly reasons that the decedent is limited by the terms of any such pre-need funeral services contract in expressing how disposition should occur, and that absent the presentation of said documentation, the Appellee's case fails for want of proof. The statute does not dictate that the decedent must direct disposition of his/her remains in said contract, - the statute merely states that if such a contract exists, then the decedent retains control over the disposition of his remains. The burden is upon the proponent of said contract to prove that the decedent entered into such an agreement, but the existence of such a contract is merely a condition precedent to establishing decedent's right, whether expressed in said contract or otherwise.

¶4 The majority finds the term 'pre-needs burial contract' is defined nowhere in the Oklahoma statutes, but finds that the decedent's burial plot purchase documentation fails to meet the definition. I respectfully disagree. Construing the statute this narrowly leads to a major impediment to the exercise of a decedent's wishes, which appears to be inconsistent with the legislative intent.

¶5 While neither the common law wife nor the children in this case elected to place the specific burial plot documents into evidence herein, it is the mere existence of said documentation that retains for the decedent the right to direct the disposition of his remains, and the existence of the documentation is undisputed.

¶6 Appellant contends that the statements of the decedent are not admissible evidence of the decedent's wishes concerning the disposition of his remains. Clearly, the wishes of the decedent might be expressed in ways other than the terms of the statutory documentation, and having determined that the decedent retained control over the disposition of his remains, the trial court needed to resolve the issue of what evidence was admissible. Appellant cites Oklahoma law, applying the evidence code in favor of her construction of the law, but these cases do not speak to the disposition of human remains. It is commonly held in this country that where a dispute arises between survivors as to terms of the disposition of a decedent's remains, the court may look to the orally expressed wishes of the deceased. See, e.g., Rosenblum v. New Mt. Sinai Cemetery Ass'n., 481 S.W.2d 593, 594-595 (Mo.Ct.App. 1972) (testimony of decedent's oral statements is competent evidence in light of all the facts attending their utterance, in a dispute over disposition of a body, and is dependent upon the particular facts and circumstances of each case); In re Scheck's Estate, 14 N.Y.S.2d 946 (Sur. 1939) (the court received parol evidence of the decedent's statements to override earlier written instructions as to disposition of her remains); Tkaczyk v. Gallagher, 222 A.2d 226 (Conn.Sup.Ct. 1965) (the court received testimony of decedent's oral expressions of her desire to have her remains cremated, which was 'contrary to her early religious training.') (internal citations omitted).

¶7 In the present case the surviving spouse, who was estranged from the decedent for several years prior to death, has announced her intent to cremate the remains of the decedent. Given the fact that the common law wife and the decedent had been apart for several years, it would be perfectly reasonable for a trier of fact to give weight to evidence that the decedent had stated that he did not wish to be cremated, and his estranged common law wife might reasonably have been motivated to subvert the decedent's true wishes and punitively or maliciously order cremation as a final parting shot to other family members. It was undisputed that the decedent was Jewish. It is commonly known that those of the Jewish faith who adhere to a traditional conservative interpretation of the faith, incineration of the body is forbidden. While the record is conflicting as to whether or not this decedent practiced traditional conservative Judaism, the evidence clearly established that the decedent had a vehement objection to the practice of cremation, as is recited in detail in the letter ruling prepared by Judge Welch.

¶8 Had the decedent failed to establish his prior right to control the disposition of his remains, we might need to consider whether or not an estranged common law spouse is entitled to the statutory preference set forth in Title 21, but under the facts presented herein, I believe that the trial court was well within the bounds of the law to find that the decedent had preserved his right to control the disposition of his remains, and that the evidence presented sufficiently proved how he wished this to occur. I would affirm the methodical and cogent work of the trial court, and I thus respectfully dissent.

 






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2004 OK 82, 102 P.3d 133, THOMAS v. E-Z MART STORES, INC.
Discussed
 2005 OK 88, 125 P.3d 1219, BROWN v. OKLAHOMA SECONDARY SCHOOL ACTIVITIES ASSOCIATION
Discussed
 1996 OK 109, 925 P.2d 546, 67 OBJ 2930, Sharp v. 251st Street Landfill, Inc.
Discussed
 2013 OK 50, 304 P.3d 457, DOWELL v. PLETCHER
Discussed
 2013 OK 84, 313 P.3d 891, SCOTT v. OKLAHOMA SECONDARY SCHOOL ACTIVITIES ASSOCIATION
Discussed
 1977 OK 17, 561 P.2d 499, BD. OF REGENTS, ETC. v. NAT. COLLEGIATE ATH. ASS'N
Discussed
 2016 OK 112, 384 P.3d 496, BROWN v. ALLEY
Discussed
 2018 OK 21, 415 P.3d 43, BENEDETTI v. CIMAREX ENERGY COMPANY
Discussed
 2018 OK 91, 434 P.3d 941, CHRISTIAN v. CHRISTIAN
Discussed
 2019 OK 2, 435 P.3d 109, KOHLER v. CHAMBERS
Discussed
 2020 OK 88, 475 P.3d 862, IN THE MATTER OF THE ESTATE OF FORESEE
Discussed at Length
 1903 OK 84, 74 P. 368, 13 Okla. 264, MARSHALL v. HOMIER
Discussed
 1942 OK 417, 131 P.2d 1019, 191 Okla. 581, POWELL v. POWELL
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 952, Jurisdiction of Supreme Court
Cited
 12 O.S. 1381, Injunction
Cited
 12 O.S. 3002, Requirement of Original
Cited
 12 O.S. 3003, Admissibility of Duplicates
Discussed
 12 O.S. 3004, Admissibility of Other Evidence of Contents
Discussed
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 1158b, Effect of Signing Funeral Service Agreement or Other Authorization for Disposition - Rights and Responsibilities of Funeral Directors
Discussed
 21 O.S. 1151, Right to Direct the Disposal of One's Body
Discussed at Length
 21 O.S. 1158, Right to Control Disposition of Remains - Persons in Whom Vested
Discussed at Length
Title 36. Insurance
 Cite
Name
Level

 36 O.S. 6121, Permits Required
Discussed
 36 O.S. 6123, Administration of Act - Contracts - Retention of Itemized Statement of Charges
Discussed
Title 58. Probate Procedure
 Cite
Name
Level

 58 O.S. 82, Proof of Lost or Destroyed Will
Cited
 58 O.S. 122, Persons Entitled to Letters of Administration
Cited
Title 84. Wills and Succession
 Cite
Name
Level

 84 O.S. 46, Requisites of Nuncupative Wills
Cited
 84 O.S. 55, Formal Requisites in Execution - Self-proved Wills
Discussed


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA